THE STATE OF OHIO, APPELLEE, *v.* COLEMAN, APPELLANT.

[Cite as State *v.* Coleman (1989), 45 Ohio St. 3d 298.]

(No. 87-2074—Submitted April 25, 1989—Decided September 20, 1989.)

Arthur M. Ney, Jr., prosecuting attorney, and William E. Breyer, for appellee.

Michael H. Siegler and Hal R. Arenstein, for appellant.

ALICE ROBIE RESNICK, J. Appellant has raised twelve propositions of law. Each has been reviewed and for the reasons which follow we find them without merit and uphold the appellant's convictions and death sentence.

I

Appellant asserts in his first proposition of law that he was denied his constitutional right to a fair capital trial due to the introduction of evidence of unadjudicated crimes from other jurisdictions.

During the trial the prosecution introduced evidence of approximately ten other criminal acts. The purpose of presenting this evidence was twofold. First, the state's burden of proof on the first death-penalty specification was to show a "course of conduct" on the part of the defendant involving the killing or attempted killing of two or more persons. Second, the evidence was introduced pursuant to R.C. 2945.59 to prove identity by showing that the appellant had used a similar "scheme, plan, or system" in committing other acts.

In reviewing the testimony which was presented we find that the majority of the victims were young black females who were killed by ligature strangulation; the bodies were generally left in abandoned buildings or areas where they would not be found for some time; and appellant and Brown normally fled in a stolen vehicle. Courts have routinely admitted such evidence to prove relevant issues, such as identity, intent, and lack of mistake. State v. Flonnory (1972), 31 Ohio St. 2d 124, 60 O.O. 2d 95, 285 N.E. 2d 726; State v. Morehead (1970), 24 Ohio St. 2d 166, 53 O.O. 2d 379, 265 N.E. 2d 551.

Additionally, we held in the first paragraph of the syllabus of State v. Broom (1988), 40 Ohio St. 3d 277, 533 N.E. 2d 682, that "[b]ecause R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. (State v. Burson [1974], 38 Ohio St. 2d 157, 158-159, 67 O.O. 2d 174, 175, 311 N.E. 2d 526, 528; State v. DeMarco [1987], 31 Ohio St. 3d 191, 194, 31 OBR 390, 392, 509 N.E. 2d 1256, 1259, followed.) The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. (State v. Flonnory [1972], 31

Ohio St. 2d 124, 126, 60 O.O. 2d 95, 96-97, 285 N.E. 2d 726, 729, followed.)" It is irrelevant that the other acts occurred outside the jurisdiction.

In the case before us the "other acts" were almost identical to the Tonnie Storey killing. The similarities of the other acts tend to show appellant's intent or motive to kill and thus the evidence was properly admitted under R.C. 2945.59.

Further, there is no merit to appellant's assertion that the probative value of the other acts evidence was outweighed by the danger of unfair prejudice. The probative value of the other acts evidence was considerable. A review of the five other murders alleged to have been committed by appellant and the thefts of automobiles used to flee the various cities reveals a unique, identifiable plan of criminal activity.[1]

---

[1] During the summer of 1984 Alton Coleman and Debra Brown embarked upon a course of criminal conduct through several Midwestern states. In May 1984 appellant befriended Juanita Wheat, a black female, who lived in Kenosha, Wisconsin, and was the mother of nine-year-old Vernita. On May 29, 1984, appellant abducted Vernita to Waukegan, Illinois. Her body was discovered on June 19, 1984 in an abandoned building, four blocks from appellant's grandmother's apartment. The body was badly decomposed and the cause of death was ligature strangulation.

On May 31, 1984, appellant befriended Robert Carpenter in Waukegan, Illinois, and spent the night at his home. The next day he borrowed Carpenter's car to go to the store and never returned.

In June 1984, appellant and Brown appeared in Gary, Indiana, where they encountered two young black girls, Annie Hillard, age nine or ten, and Tamika Turks, age seven. Tamika's partially decomposed body was discovered on June 19, 1984. The cause of death was ligature strangulation. Annie survived.

On June 19, 1984, appellant befriended Donna Williams, a twenty-five-year-old black female, of Gary, Indiana. On July 11, 1984, Williams' badly decomposed body was discovered in Detroit, Michigan, one-quarter to one-half mile from where her car was found. The cause of death was ligature strangulation.

On June 28, 1984, appellant and Brown entered the home of Mr. and Mrs. Palmer Jones of Dearborn Heights, Michigan. Palmer was handcuffed by Coleman and then badly beaten. Mrs. Jones was also attacked. Coleman ripped the Joneses' phone from the wall and stole their money and car.

On July 5, 1984, appellant and Brown came to Toledo, Ohio, where appellant befriended Virginia Temple, an adult black female and the mother of several children. Her eldest child was Rachelle, age nine. Relatives became concerned about the children and upon entering the home found the young children alone and frightened. Virginia's and Rachelle's bodies were discovered in a crawl space. A bracelet was missing from the home and later was found in Cincinnati under the body of Tonnie Storey. The cause of death of both Virginia and Rachelle was strangulation.

On July 7, 1984, appellant and Brown entered the home of Mr. and Mrs. Frank Duvendack of Toledo. Coleman handcuffed Frank. The Duvendacks were then bound with their own appliance cords and phone cords which had been cut, and money and the Duvendacks' car was stolen.

On July 7, 1984, appellant and Brown appeared at the home of Reverend and Mrs. Millard Gay of Dayton, Ohio. They stayed with them in Dayton and then accompanied them to Lockwood, Ohio, on July 9, to a religious service. On July 10, the Gays dropped off appellant and Brown in downtown Cincinnati.

On July 17, 1984, appellant and Brown reappeared at the Gay home. The Reverend Mr. Gay recognized appellant and he and his wife were accosted with guns. Mr. Gay asked appellant, "* * * why you want to do us like that, like this," and according to Gay, Coleman responded: "I'm not going to kill you. * * * But we generally kills them where we go." Appellant took Mr. Gay's car.

Additionally we find no error in the admission of the photographs concerning the other acts. See this court's decision in *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 513 N.E. 2d 267.

Lastly, no merit is found in appellant's assertion that the other acts evidence violated his rights under the Compulsory Process Clause since appellant has failed to demonstrate any prejudice by the admission of such evidence.

## II

In his second proposition of law appellant contends that he was denied a fair trial due to erroneous jury instruction as to aiding and abetting, and due to prosecutorial misconduct. We find that these errors were not properly preserved for appellate review. There is no record of an objection at a time when corrective action, if necessary, could have been taken. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364.

However, since this is a capital case we have reviewed the jury instructions and find not only that there was a correct statement of the law but also that the trial court additionally instructed the jury it could not convict the defendant of aggravated murder unless it found that he specifically intended that Tonnie die.[2]

Thus, when considering the entire charge, we find nothing improper in the instruction on aiding and abetting.

Appellant next asserts that the prosecutor's comment on the role of the jury in a death penalty case was improper in view of *Caldwell* v. *Mississippi* (1985), 472 U.S. 320. We distinguished *Caldwell* in *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795, and therefore find that there was nothing improper in the comments of the prosecution.

Lastly, appellant contends that the prosecution's repeated reference to appellant's "unsworn" statement during the penalty phase was prejudicial. In this case the prosecutor simply argued as to the fact that the statement was unsworn. Hence it fell within the limitations set forth in *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 528 N.E. 2d 542, at paragraph two of the syllabus.

Accordingly, appellant's second proposition of law is found meritless.

## III

Appellant in his third proposition of law asserts that he was denied a fair trial due to the fact that the Prosecuting Attorney of Hamilton County was permitted to testify during the guilt phase of the trial. The prosecuting attorney was not engaged as active counsel in the trial. In fact, he personally took no part in the trial of this case. He was called as a witness to identify certain handwritten motions prepared by appellant.

Appellant asserts that the prosecutor's testimony was highly irregular and unethical. While this is a situation which should be avoided, the testimony may be "permitted in extraordinary circumstances and for compelling reasons, usually where the evidence is

---

On July 13, 1984, appellant and Brown entered the home of Mr. and Mrs. Harry Walters of Norwood, Ohio. Mrs. Walters was killed and Harry was attacked. Money and the Walterses' car were stolen.

[2] "Purpose to kill is an essential element of the crime of aggravated murder. A person acts purposely when it is a specific intention to cause a certain result. It must be established in this count, that at the time in question, there was present in the mind of the defendant a specific intention to kill Tonnie Storey."

Additionally, the court instructed the jury: "No person may be convicted of aggravated murder unless he [is] specifically found to have intended to cause the death of another."

not otherwise available." *United States v. Johnson* (C.A. 7, 1982), 690 F. 2d 638, 644. Such circumstances existed in this case.

At the murder scene, certain words were printed in uppercase letters on a wall above the body. Handwriting exemplars were obtained from appellant but they were all in lowercase writing. Appellant contended that he could not print uppercase letters. Thus the prosecution resorted to handwritten motions which appellant had filed in another case for the handwriting expert to use as the comparison writing from which he could testify. The prosecuting attorney was evidently the only witness available to testify that these motions had been written by appellant.

Since this testimony was necessary to lay a foundation for the expert's testimony, and the prosecuting attorney was the only person available to testify as to the identity of the author of the motions, we find that the trial court did not err in admitting such testimony.

Appellant refused to provide uppercase exemplars when requested. The court in *United States v. Johnson, supra,* at 646, stated that "where the defendant attempts to take advantage of a situation that was his own doing, not the government's, the government, by the only means at its disposal, should be permitted to fully attempt to thwart suppression and to impeach the defendant." In the instant case appellant would not cooperate by giving the appropriate exemplar. We recognize that a prosecuting attorney should avoid being a witness in a criminal prosecution, but where it is a complex proceeding where substitution of counsel is impractical, and where the attorney so testifying is not engaged in the active trial of the cause and it is the only testimony available, such testimony is admissible and not a violation of DR 5-102.

Appellant's third proposition of law is without merit.

## IV

This court has determined appellant's fourth proposition of law relating to an allegedly improperly constituted grand jury in *State v. Brown* (1988), 38 Ohio St. 3d 305, 528 N.E. 2d 523, wherein we stated in the first paragraph of the syllabus: "The number of jurors on a grand jury does not affect a substantive right. Accordingly, Crim. R. 6(A) controls the issue of how many grand jurors are needed to issue an indictment. R.C. 2939.02 and 2939.20 are superseded insofar as they conflict with this rule. (*Wells v. Maxwell* [1963], 174 Ohio St. 198, 22 O.O. 2d 147, 188 N.E. 2d 160, approved and followed.)" Hence appellant's assertion that his constitutional right to due process of law was denied is without merit.

## V

Appellant next asserts that he was denied a fair trial when the trial court rejected his motion for a change of venue.

Crim. R. 18(B) provides that a change of venue is to be granted if it appears that a fair and impartial trial cannot be conducted. Crim. R. 24 provides the procedure for impaneling a jury. In this case the trial court waited until voir dire was completed before it ruled upon appellant's motion for a change of venue.

This court recognized the long-established rule in *State v. Maurer* (1984), 15 Ohio St. 3d 239, 250-251, 15 OBR 379, 389, 473 N.E. 2d 768, 781, that the " 'examination of jurors on their *voir dire* affords the best test as to whether prejudice exists in the community against the defendant, and

where it appears that opinions as to the guilt of the defendant of those called for examination for jurors are not fixed but would yield readily to evidence, it is not error to overrule an application for a change of venue, in absence of a clear showing of an abuse of discretion.' *State* v. *Swiger* (1966), 5 Ohio St. 2d 151 [34 O.O. 2d 270], paragraph one of the syllabus."

In the instant case we have reviewed the voir-dire examination and the argument on appellant's motion for a change of venue and we do not find that the trial court abused its discretion in denying the motion. On the contrary, the record reveals several days of extensive, in-depth examination of prospective jurors and argument, with accompanying documentation, on the motion for change of venue. Jurors who expressed an inability, unwillingness or uncertainty as to their ability to set aside any preconceived opinions that they may have had and be fair and impartial jurors were excused for cause. Some of those jurors excused were Bross, Kraemer, Kammer, Alfieri, Nawhorter, Scharff, and Osburn.

After voir dire was completed, the trial judge took the motion under advisement in order that he might further review all of the information before him. He also heard arguments and finally made his ruling. Such consideration by the trial court does not reflect an attitude which was unreasonable, arbitrary or unconscionable and therefore there was no abuse of discretion. Appellant's fifth proposition of law is without merit.

## VI

Appellant in his sixth proposition of law asserts errors concerning the denial of a speedy trial, joint trial, and right to timely pretrial discovery.

We will first consider the issue of appellant's right to be tried with his co-indictee, Brown. Crim. R. 14 provides in pertinent part: "* * * When two or more persons are jointly indicted for a capital offense, each of such persons shall be tried separately unless the court orders the defendants to be tried jointly, upon application by the prosecuting attorney or one or more of the defendants, and for good cause shown."

The use of the word "shall" makes it mandatory for all jointly indicted defendants to be tried separately unless the trial court orders a joint trial pursuant to the strict mandates set forth in Crim. R. 14 and R.C. 2945.20. *State* v. *Henry* (1983), 4 Ohio St. 3d 44, 4 OBR 136, 446 N.E. 2d 436. The rule does not normally contemplate joint trials in capital cases. In this case appellant made a statement which may have incriminated Brown and thus it would have been impossible to use the statement if a joint trial were held. Appellant presented no explanation of how he was prejudiced by being tried separately. Hence no good cause has been shown. This court also rejected the identical issue in *State* v. *Brown, supra.*

Next, appellant asserts that he was denied a speedy trial pursuant to R.C. 2945.71 and the Interstate Agreement on Detainers, R.C. 2963.30. The record shows that appellant was returned to Hamilton County on January 7, 1985, pursuant to R.C. 2963.30, for trial on two separate capital indictments. Hamilton County obtained jurisdiction over him from the federal prison system. This case was initially set for trial on April 29, 1985, but it had to be reset for trial to June 17, 1985, since appellant's trial for the other capital murder would not be completed by April 29. The first trial ended on or about May 6, 1985 and this case commenced May 20, 1985.

A felony defendant in Ohio must be tried within ninety days if incarcerated on the pending charge or within two hundred seventy days if on bail. R.C. 2945.71(C)(2) and (E). The ninety-day period of R.C. 2945.71 does not apply when a defendant is being held on multiple charges pending separate trials. *State* v. *Ladd* (1978), 56 Ohio St. 2d 197, 10 O.O. 3d 363, 383 N.E. 2d 579; *State* v. *Kaiser* (1978), 56 Ohio St. 2d 29, 10 O.O. 3d 75, 381 N.E. 2d 633; and *State* v. *MacDonald* (1976), 48 Ohio St. 2d 66, 2 O.O. 3d 219, 359 N.E. 2d 40.

Since appellant was not being held in jail in lieu of bail solely on the pending charge, the ninety-day period of R.C. 2945.71 was inapplicable. Appellant was brought to trial on the one hundred thirty-third day.

The record also demonstrates compliance with R.C. 2963.30. Since appellant was on trial on the other capital case on the one hundred nineteenth day, the two-week continuance after the trial was reasonable. Hence, appellant was not denied a speedy trial.

Lastly, appellant asserts that he was not accorded his right to timely pretrial discovery of names and addresses of out-of-state witnesses. This issue is being raised for the first time at this juncture and therefore was not properly preserved. *State* v. *Williams, supra.*

For all the foregoing reasons appellant's sixth proposition of law is rejected.

## VII

Appellant asserts in his seventh proposition of law that multiple prejudicial errors occurred during jury selection.

First, appellant alleges that he was denied a fair trial when his request for an expert to assist him in jury selection was rejected. This court considered this issue in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E.

2d 264, and stated that "[t]here is also nothing to support appellant's contention that the services of a social scientist would have been valuable to aid counsel in jury selection, or to establish the effects of pretrial publicity. The experts sought here would have been no more than consultants to counsel as opposed to sources of evidence relevant to disputed factual issues." *Id.* at 194, 15 OBR at 336, 473 N.E. 2d at 292. We will analogize to the test in *Britt* v. *North Carolina* (1971), 404 U.S. 226, which determined an indigent defendant's need for a free trial transcript based upon (1) the value of the transcript (expert assistance) and (2) the availability of alternatives that would fulfill the same function as the transcript (expert assistance). Applying those factors and the reasoning found in *State* v. *Jenkins, supra,* we do not find that the trial court erred in refusing this request for expert assistance.

Appellant next asserts that it was error for the trial court to essentially deny his motion to individually examine prospective jurors and sequester those passed for cause. In *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140, this court held at paragraph three of the syllabus that "[t]he determination of whether a *voir dire* in a capital case should be conducted in sequestration is a matter of discretion within the province of the trial judge." We do not find that the trial court abused its discretion in denying appellant's request.

Appellant contends that he was prejudiced when prospective juror Sylvia Thornton was excused for cause because she was a convicted felon who had completed her sentence and parole. We find no merit to this contention since Thornton's felony conviction subjected her to a challenge for cause pursuant to R.C. 2945.25(I) and Crim.

R. 24(B)(1). While R.C. 2951.09 provides that "* * * the judge of the court of common pleas *may* restore the defendant to his rights of citizenship, of which such convict may or shall have been deprived by reason of his conviction under section 2961.01 of the Revised Code * * *" (emphasis added), there is no showing in the record that Thornton's rights of citizenship had been restored. Since the statute uses the word "may," such restoration is discretionary with the judge of the common pleas court. Appellant has failed to put forth any statutory basis on which prejudicial error could be established. There is no merit to this contention. Appellant was, in fact, tried by a fair and impartial jury.

Appellant's next assertion that he was observed in shackles by jurors is without merit since there is no evidence in the record showing this to be the case.

Lastly, several prospective jurors were excused from the jury because under no circumstances would they impose the death penalty. This issue has been resolved in *Wainwright* v. *Witt* (1985), 469 U.S. 412, wherein the court held that a prospective juror in a capital case may be excluded for cause if his views on capital punishment "* * * would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " This court has followed this holding in a long line of cases including *State* v. *Buell, supra; State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E. 2d 984; and *State* v. *Jenkins, supra.*

For all the foregoing reasons, appellant's seventh proposition of law is meritless.

## VIII

In his eighth proposition of law appellant questions the constitutionality of R.C. 2929.03(D)(1). This issue was not raised in the trial court and is therefore waived on appeal. *State* v. *Awan* (1986), 22 Ohio St. 3d 120, 22 OBR 199, 489 N.E. 2d 277.

However, this issue was considered in *State* v. *Buell, supra,* wherein we found no constitutional infirmity in providing a defendant with the option of requesting a presentence report and mental examination. In many instances a defendant may not want to submit to a mental examination or have his entire background exposed for scrutiny. Leaving this choice entirely to a defendant better protects his constitutional rights.

Appellant further contends that a one-day lapse between the guilt phase and penalty phase was insufficient time. Ohio death penalty statutes impose no specific time requirements, leaving the matter of when to proceed with the penalty phase to the sound discretion of the trial court. In this instance, when the trial court asked appellant how much time he would need to prepare for the penalty phase, he indicated "overnight." In *Darden* v. *Wainwright* (1986), 477 U.S. 168, the United States Supreme Court held that a half-hour gap between the guilt phase and penalty phase was sufficient time, in view of the many hours that had been spent in preparation for trial.

This court held in *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, that three days was a sufficient time to prepare for the penalty phase. In this instance overnight was sufficient time for appellant to prepare in view of the evidence presented and lack of claim of any mitigating evidence that could have been presented. Thus, appellant has demonstrated no prejudice here.

We find no merit to appellant's eighth proposition of law.

## IX

Appellant in his ninth proposition of law asserts that his death sentence cannot stand since it is supported in part by illegally seized property.

The search warrant in question was executed on the apartment of appellant's grandmother, Alma Hosea, of Waukegan, Illinois.

At the suppression hearing appellant did not testify. In fact, the only witnesses, other than a Waukegan police officer, were FBI agents who executed the warrant. It was their testimony that Hosea consented to the search. Not only was there consent to search, but also appellant has failed to demonstrate that he had standing to object to the warrant or subsequent search. The only evidence as to any personal interest appellant might have had in his grandmother's apartment, through statements of his grandmother to the FBI agents, was insufficient.

In *Alderman* v. *United States* (1969), 394 U.S. 165, the court held that Fourth Amendment rights are personal in nature. A person who alleges error by the use of evidence taken from someone else's property cannot claim that his own rights have been violated. Only those whose personal rights have been violated can raise Fourth Amendment claims. Declining to extend the rule of standing of *Jones* v. *United States* (1960), 362 U.S. 257, in Fourth Amendment cases, the court in *Rakas* v. *Illinois* (1978), 439 U.S. 128, held: "As we stated in *Alderman* v. *United States* (1969), 394 U.S. 165, 174, 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" In *Rawlings* v. *Kentucky* (1980), 448 U.S. 98, the court stated once again that, "[p]etitioner, of course, bears the burden of proving

not only that the search of Cox's purse was illegal, but also that he had a legitimate expectation of privacy in that purse." Appellant, having failed to establish a personal interest in his grandmother's apartment, cannot succeed in this contention.

Appellant asserts that the search warrant was unsigned. Appellant did not raise this issue in the trial court and therefore it is waived. *State* v. *Awan, supra.* In addition, the record indicates that the original warrant was signed.

Appellant also attacks the search warrant on the basis that the items to be seized were not sufficiently specified. There is no merit to this contention. A list of specific items was given, along with general categories of evidence described in language similar to that approved in *Andresen* v. *Maryland* (1976), 427 U.S. 463.

Appellant, in concluding this proposition of law, asserts that the statements he made to FBI agents on the day of his arrest should have been suppressed. It appears that the only statement made was just after the booking process. It was not the result of questioning by police officers but rather it was purely voluntary.

The law of *Miranda* v. *Arizona* (1966), 384 U.S. 436, has no application to purely voluntary statements which are not the result of "express questioning or its functional equivalent." *Rhode Island* v. *Innis* (1980), 446 U.S. 291, 300-301. Since appellant initiated this conversation this statement was admissible at trial. *Oregon* v. *Bradshaw* (1983), 462 U.S. 1039.

We reject appellant's ninth proposition of law.

## X

There is no merit to appellant's tenth proposition of law in which he contends that his convictions and

sentence of death were not supported by sufficient evidence.

Appellant argues that his convictions were based solely on circumstantial evidence and, further, that the cause of death of Tonnie was not established beyond a reasonable doubt. Addressing the issue of cause of death, Dr. Charles S. Hirsch, of the coroner's office, performed the autopsy and testified that the cause of death was homicidal asphyxia. Knotted, blood-stained strips of cloth were found at the crime scene.

As to appellant's convictions, there was overwhelming evidence, though circumstantial, in this case. Appellant was identified as being with Tonnie between 5:00 and 6:00 p.m. at the intersection of May and Morgan Streets. Co-indictee Brown's fingerprint was found on decedent's Michael Jackson button. Appellant's footprint was found in the building where the body was discovered. Also, envelope fragments from the Gays' home in Dayton linked appellant to the crime scene, and a bracelet, which came from another crime committed by appellant in Toledo, was found under the body. The writing on the wall above the body was identified as that of appellant.

The trial court did not err in overruling appellant's motion for a judgment of acquittal. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184. Additionally, there was sufficient evidence for the jury to determine the cause of death as well as the identity of the perpetrator. See *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394; *State* v. *Bridgeman, supra.*

Appellant's tenth proposition of law is rejected.

## XI

Appellant contends in his eleventh proposition of law that he was denied effective assistance of counsel at various stages of the proceedings. First, appellant asserts that it was ineffective assistance of counsel to permit the penalty phase of the proceedings to proceed within one day of the conclusion of the guilt phase.

In *Strickland* v. *Washington* (1984), 466 U.S. 668, at 687, the United States Supreme Court set forth what is required to establish ineffective assistance of counsel:

"* * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

In the instant case, and as stated previously, based upon the nature and extent of the evidence presented and the lack of any claim of mitigating evidence that could have been presented, it would make little difference to the result of the case if the penalty phase took place one day or two weeks later than the guilt phase. As stated previously, in *Darden* v. *Wainwright, supra,* the United States Supreme Court held that a half-hour gap between the guilt phase and the penalty phase was sufficient time.

Appellant also contends that it was ineffective assistance of counsel not to present a handwriting expert. There is nothing in the record from which we

can determine whether such evidence would have been favorable to appellant and caused the outcome of the trial court to be different. The claimed act of ineffective assistance of counsel was simply trial strategy. See *State* v. *Post* (1987), 32 Ohio St. 3d 380, 513 N.E. 2d 754; *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 514 N.E. 2d 407; *State* v. *Cooperrider* (1983), 4 Ohio St. 3d 226, 4 OBR 580, 448 N.E. 2d 452; *State* v. *Clayton* (1980), 62 Ohio St. 2d 45, 16 O.O. 3d 35, 402 N.E. 2d 1189. In this instance we, therefore, find no merit to appellant's assertion that counsel was ineffective because he did not present a handwriting expert.

Appellant also asserts that there was ineffective assistance of counsel in that appellant did not request a presentence investigation and did not submit to a mental examination. The record is clear that appellant refused both these options. We find this contention without merit.

Finally, there is no merit to appellant's assertion that the failure of defense counsel to object to the prosecutor's comments as to appellant's statement being unsworn was ineffective assistance of counsel, since such comments were appropriate and within the guidelines set forth in *State* v. *DePew, supra.*

We find that appellant has failed to meet the *Strickland* test as to ineffective assistance of counsel which has been reaffirmed in *Darden* v. *Wainwright, supra,* wherein the court stated, at 184: "[f]irst, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' *Id.* [*Strickland, supra*], at 688. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.* at 694."

Appellant has failed to show that defense counsel's representation was deficient and that the result is unreliable.

Appellant's eleventh proposition of law is rejected.

## XII

In his final proposition of law appellant asserts that the death penalty scheme in Ohio is unconstitutional due to numerous procedural and substantive defects in violation of both the United States and Ohio Constitutions, some of which are being raised for the first time on appeal. The appellant recognizes that all the alleged constitutional defects have been considered by this court and found not to be in violation of either the Ohio or United States Constitution. We will briefly comment on them in the order that they have been raised by appellant.

The death penalty by means of electrocution is not cruel and unusual punishment. *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407; *State* v. *Buell, supra*; and *State* v. *Jenkins, supra.*

This court and the United States Supreme Court have found that the existence of discretion in the charging stage of a capital prosecution does not render a death penalty statute unconstitutional. *State* v. *Jenkins, supra*; and *Gregg* v. *Georgia* (1976), 428 U.S. 153.

Appellant alleges a constitutional infirmity as to the statute's failure to require premeditation or deliberation as culpable mental states. This contention has been found to be without merit in *State* v. *Jenkins, supra.*

In *State* v. *Jenkins, supra,* we found that R.C. 2929.03 does, in fact, provide the jury with adequate guidelines to determine the mitigating factors in a capital case. In *Jenkins, supra,* we also found that R.C. 2929.03 properly provides the jury with adequate criteria to determine whether

the aggravating circumstances outweigh the mitigating factors. Further, *State* v. *Jenkins, supra,* upheld the consideration of aggravating circumstances during the guilt phase of a capital trial.

The issue of the constitutionality of R.C. 2929.03 and 2929.04 regarding the treatment of felony murder and premeditated murder was determined in *State* v. *Jenkins, supra.* The treatment was found to be equal and thus constitutional.

Again, *State* v. *Jenkins, supra,* resolved the issue which appellant raises regarding the constitutionality of the procedure followed after the sentencing authority finds that the aggravating circumstances outweigh the mitigating factors.

We found in *State* v. *Jenkins, supra,* and *State* v. *Mapes, supra,* that it is appropriate to have the same jury determine both guilt and penalty.

Appellant's next assertion that Crim. R. 11(C)(3) violates the pronouncements of *United States* v. *Jackson* (1968), 390 U.S. 570, was rejected by this court in *State* v. *Buell, supra.*

*State* v. *Buell, supra,* also resolved the question which appellant raises as to Ohio's death penalty scheme creating a mandatory death penalty.

Lastly, appellant's contention that the Ohio death penalty procedure is infirm in that it allows the prosecution to open and close was decided in *State* v. *Jenkins, supra,* and found to be without merit.

After a thorough consideration of appellant's twelfth proposition of law, we find that all those issues concerning the constitutionality of the Ohio death penalty statutes have been considered by this court on numerous occasions and the death penalty scheme has been found to be constitutional. Appellant's twelfth proposition of law is rejected.

We now shall proceed, pursuant to R.C. 2929.05(A), to review and independently weigh all the facts and other evidence disclosed in the record to determine whether the aggravating circumstance outweighs beyond a reasonable doubt the mitigating factors. We find that the aggravated murder of Tonnie Storey was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons. This was proven beyond a reasonable doubt by means of substantial evidence found in the record. Against this aggravating circumstance we find no mitigating factors. Rather, the only evidence presented to the jury was the unsworn statement of appellant which contained absolutely no mitigation.

Pursuant to our further statutory duty, we have considered other cases involving aggravated murders which were a part of a course of conduct involving a purposeful killing of or attempt to kill two or more persons. We find that the death penalty in this case is not excessive or disproportionate to similar cases, such as *State* v. *Sowell* (1988), 39 Ohio St. 3d 322, 530 N.E. 2d 1294; and *State* v. *Brown, supra; State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568; and *State* v. *Brooks, supra.* Death sentences were affirmed by this court in all of the foregoing cases.

Accordingly, we affirm appellant's convictions and sentence of death, having found from the evidence presented that the aggravating circumstance that appellant was found guilty of committing outweighs, beyond a reasonable doubt, the mitigating factors. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.