DECISION AND JUDGMENT ENTRY
Appellant, Michael Whitson, appeals from a judgment of the Wood County Court of Common Pleas, wherein appellant was found guilty on one count of rape, a violation of R.C. 2907.02(A)(2), a felony of the first degree, and on one count of kidnaping, a violation of R.C. 2905.01(A), a felony of the first degree. However, the court determined that, in this case, kidnaping and rape were allied offenses of similar import and sentenced appellant solely on the charge of rape to eight years in prison. In addition, the trial court classified appellant as a "sexual predator," as defined in R.C. 2950.01(E).
Appellant asserts the following assignments of error:
 "DEFENDANT-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN THAT IT WAS NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT HE SHOULD BE CLASSIFIED AS A SEXUAL PREDATOR PURSUANT TO OHIO REVISED CODE SECTION 2950.09 AND AS FURTHER DEFINED IN OHIO REVISED CODE SECTION 2950.01(E)."
On July 12, 1998, the victim in this case, the night auditor at the Howard Johnson Motel in Wood County, Ohio, was working in her office. She had a lit cigarette in her left hand. At approximately 3:15 a.m., a man, wearing a white mask, made from either a T-shirt or a sheet and with two eyeholes cut in it, entered her office, grabbed the victim and pulled her toward the back office. As she tried to step away from the masked man, he reached out and grabbed her breast. The victim, hoping to deter her assailant, brought her left hand up and burned the man, who was not wearing a shirt, on the upper right arm or chest with her cigarette. However, he continued to pull the victim, they struggled and fell on top of a desk. At that point, the assailant put his hands down the front of the victim's pants. She told him, "I don't want to do that" and stated that she was "on her period." The man replied, "I don't care."
As the struggle continued and the assailant attempted to rip off the victim's blouse and/or pants, she was able to dial 911 on the telephone sitting on her desk. As he pulled her toward the door, the victim, in the hope that the emergency call was completed, began yelling, "Help. This is Howard Johnson's." Despite the fact that the victim held onto the door frame, the man was able to overpower her. She fell into a bed of stones outside the office. The man then began pulling her toward the back of the motel. The victim next grabbed a light pole, but her assailant either tripped her or grabbed her legs and pulled them out from under her. As he laid on top of the victim, the masked man put his right hand down her pants and placed his fingers in her vagina. He put his left hand over her mouth and pinched her nose with his thumb and forefinger, cutting off her breath.
After a couple of seconds, the assailant stood up and, holding the victim by the waist, started pulling and pushing her across a grassy area toward a breezeway. The victim never stopped struggling and attempting to free herself. She tripped on some stones in the vicinity of room numbers 325, 326 and 327 and again fell down. The man laid on top of her while she yelled and screamed. At this time, the victim noticed that her assailant smelled of alcohol. Larry O'Brien, the guest in room number 326, heard her screams and came out of his room. He pulled the man off the victim and threw him against a wall. The masked man struck the wall with his head and back, got up and ran away. O'Brien escorted the visibly injured victim back to the office, where police officers, who responded to the 911 call, were waiting.
The victim described her assailant as a white male who was broad shouldered, tanned, approximately five feet eight to five feet nine inches tall, weighing between one hundred fifty and one hundred sixty pounds and having blonde hair that was long in the back and short on the top of his head. Additionally, the victim stated that the man had a large bluish-green tattoo on his back in the area of his left shoulder.
Because two of the guests, who were part of a fence construction crew, currently staying in room 327 at the Howard Johnson's matched this general description, the police approached them when the work crew returned to the motel on the evening of July 12, 1998. Due to the fact that the victim indicated that she believed her attacker had a knife in his pocket, the police conducted a pat down search of the two men who matched the description. One of the men, Harold Highlander, had a gun on his person and was arrested and charged with carrying a concealed weapon. However, Highlander was taller than the man described by the victim and did not have a tattoo in the upper left quadrant of his back. On the other hand, appellant matched the description provided by the victim, including the tattoo. In addition, he had a lump on the back of his head and a burn or mark on his right chest in an area just below his armpit. Therefore, appellant was arrested and charged with the rape and kidnaping.
Prior to his jury trial, appellant's appointed counsel filed a motion for the appointment of a DNA expert at state expense. The court granted this motion and appointed an expert; nevertheless, no evidence, either in the form of a report or testimony, was presented in appellant's defense. The state, however, offered the testimony and report of Jeffery Williams, a forensic scientist employed by the Ohio Bureau of Criminal Identification and Investigation. Williams, after identifying the known standard of blood for Whitson and the victim, performed a DNA analysis on the white mask, focusing on the mouth area and on a blood stain found on the back of the mask. The expert also tested blood from a stain found on the wall of Whitson's motel room. Testifying as to the results of that analysis, Williams stated, to a reasonable degree of scientific certainty, that:
 "The DNA profile obtained from the red stain on the back of the mask was the same as the DNA profile obtained from the blood standard of * * * the victim, and different from the DNA profile deemed from Michael Whitson. The DNA profile obtained from the mouth area is the same as the DNA profile obtained from Michael Whitson and different from the profile of * * * the victim.
 "Additionally, the blood on the swab from the motel room, that DNA profile was the same as the mouth area; therefore, it was also the same as the blood standard from Michael Whitson and different from the DNA profile from * * * the victim."
Williams testified that, statistically, the results indicated that (1) the victim cannot be excluded as the source of the blood stain on the back of the mask and Whitson could be excluded as the contributor of the stain; (2) Whitson cannot be excluded as a source of DNA on the mouth area of the mask and the victim is excluded; (3) Whitson cannot be excluded as the contributor of the blood stain on the motel room wall and the victim is excluded as a contributor of that DNA material. Appellant's trial counsel conducted an extensive cross-examination of Williams, challenging the method of analysis and the import of the results, as well as eliciting answers concerning factors that might influence the outcome of a DNA analysis.
In his testimony, appellant claimed that the mark on his body was caused by his work and that the injury to the back of his head was the result of mosquito bites. Appellant maintained that, on the evening of July 11, 1998, he went to the motel lounge with Highlander. He stayed there until closing time, drinking between five and seven double shots of "Wild Turkey," a potent Kentucky bourbon, and beer. According to appellant, he was supposed to go to a young couple's room, but it was late; therefore, he just went to his own room and drank beer until he "passed out."
At appellant's sentencing, the trial court first held a hearing on the question of whether appellant should be classified as a sexual predator. Appellant's trial counsel objected to the use of the presentence investigation report because a statement made by the victim and a statement made by appellant were paraphrased and "inaccurate." While the state conceded that the two statements were not accurately presented in the report, the prosecutor argued that the court had the trial testimony of the two parties before it and could base its decision on that testimony. The court agreed, stating that the factual basis for its decision would be derived from trial testimony.
The state argued that appellant could be classified as a sexual predator based on the factors found in R.C.2905.09(A)(2)(a), (h), (i) and (j). After the prosecutor cited the evidence derived from appellant's trial to support his argument, the trial court offered appellant the opportunity to be heard. Trial counsel contended that only one of the factors, R.C.2905.09(A)(2)(i), was demonstrated and opined as to whether this was a sufficient basis for a classification of sexual predator. After discussing each of the enumerated factors, the judge found, by clear and convincing evidence, that appellant is a sexual predator. This finding was incorporated into the court's final sentencing judgment. This appeal followed.
In his first assignment of error, appellant challenges his attorney's decision not to present expert testimony at his trial to oppose the information provided by appellee's expert on DNA identification. Appellant asserts that another expert would have been more effective to attack the credibility of William's conclusions than mere cross-examination. Appellant concludes that he was provided with ineffective assistance of counsel because of this alleged deficiency.
To demonstrate ineffective assistance of trial counsel, appellant must show that, in light of all circumstances, counsel's performance fell below an objective standard of reasonable representation. He must also show prejudice, that is, a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. SeeStrickland v. Washington (1984), 466 U.S. 668, 687-694; State v.Bradley (1989), 42 Ohio St.3d 136, 142-143 and paragraphs two and three of the syllabus.
Deciding whether or not to call an expert witness is solely a matter of trial strategy. State v. Coleman (1989),45 Ohio St.3d 298, 307-08. The failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. State v. Nicholas (1993), 66 Ohio St.3d 431,436, citing State v. Thompson (1987), 33 Ohio St.3d 1, 10-11. While an expert was appointed, appellant's trial counsel was not bound to utilize his or her testimony as part of the defense strategy. Instead, trial counsel performed an extensive, knowledgeable cross-examination of the state's DNA expert that attacked the reliability of the DNA evidence identifying appellant as the rapist in this case. Furthermore, appellant has done nothing but speculate that a defense expert would have changed the outcome of his case. Ample identification evidence was presented upon which a jury could conclude, beyond a reasonable doubt, that Michael Whitson was the person who raped the victim in this case during the early morning hours of July 12, 1998. Therefore, appellant's allegation that his trial counsel did not provide effective assistance of counsel must fail, and appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant argues that, in the absence of clear and convincing evidence, he should not have been classified as a sexual predator under R.C. Chapter 2950.
A "sexual predator" is someone who has been convicted of a sexually oriented offense "and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). A "sexually oriented offense" includes rape. R.C.2950.01(D)(1). Consequently, the trial court was required to determine appellant's classification pursuant to R.C.2950.09(B)(1). Pursuant to this statute, a trial court may designate the offender as a predator, but it may do so only after holding a hearing where the prosecutor and offender have the opportunity to testify, and call and cross-examine witnesses. R.C.2950.09(B)(1).
In determining whether to classify the offender as a sexual predator, a court must consider all the relevant factors in R.C. 2950.09(B)(2), including, but not limited to:
"(a) The offender's age;
 "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 "(g) Any mental illness or mental disability of the offender;
 "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 "(j) Any additional behavioral characteris-tics that contribute to the offender's conduct." R.C. 2950.01(B)(2).
The standard for determining whether an offender is a sexual predator is by clear and convincing evidence. R.C. 2950.09(B)(3);State v. Cook (1998), 83 Ohio St.3d 404, 423-424. "Clear and convincing" is that level of evidence which is sufficient to establish in the mind of the trier of fact a "firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In the case under consideration, the trial court used the presentence investigation report and, after providing both sides with an opportunity to present additional evidence, the evidence offered at trial to reach its decision. The court noted each and every factor listed in R.C. 2950.09(B)(2). Nonetheless, the trial court judge was not required to find that all of, or even a majority of, the factors existed in this case before he could classify appellant as a sexual predator. State v. Frye
(Dec. 2, 1999), Franklin App. No. 98AP-1496, unreported; State v.Smith (Aug. 18, 1999), Shelby App. No. 17-99-1, unreported. As observed in State v. Mollohan (August 19, 1999), Washington App. No. 98-CA-13, unreported:
 "* * * [W]e find nothing in the statute which suggests that one's status as a sexual predator is determined simply by `tallying up' factors, pro and con, and then determining which group is larger. An offender could conceivably be classified as a sexual predator based on only one or two factors from R.C. 2950.09(B)(2). Courts must consider the particular facts of each case and look at the `totality of the circumstances' rather than engage in a rote mathematical computation to determine a criminal defendant's sexual predator status."
As noted by the trial court, appellant, despite his youthful age of twenty-two, has a history of convictions, including a disorderly conduct conviction, involving the use of alcohol and one conviction involving the use of marijuana. The court further noted that alcohol consumption played a part in the commission of the offense in the present case. While the court seemed to believe that the age of the victim, who was forty-five at the time of the rape, was relevant to its determination, we cannot agree.
The court also focused on the nature of the sexual conduct within a sexual context with the victim and found that it was of a particularly violent nature that "put the victim in terror for a considerable period of time." Presumably, in making this finding, the court determined that the sexual conduct in this case was a "demonstrated pattern of abuse" under R.C.2950.09(B)(2)(h). Most, if not all, case law finding this factor relevant involves multiple incidents of sexual conduct, sexual contact or sexual interaction by the same offender with the same victim; see, e.g., State v. Lattimer (Sept. 27, 1999), Holmes App. No. 97-CA-589, unreported; State v. Smith, supra; or by the same offender with different victims; see, e.g., State v. Wallace
(Sept. 27, 1999), Stark App. No. 1999CA00099, unreported. While the state asserts that the continuing struggle between appellant and his victim constitutes a pattern of abuse, we are not convinced that R.C. 2950.09(B)(2)(h) is applicable to the facts of this particular case. Rather, we view the sexual conduct of appellant toward the victim as part of the ongoing rape, not as a defined pattern of incidents. Thus, we find that this factor was not relevant to the court's determination.
The court also based its classification upon R.C.2950.09(B)(2)(i). We agree. Appellant displayed cruelty to the victim, ignoring her pleas for leniency, and dragging, pulling and pushing her through shrubs and stones over a lengthy period of time. Photographs offered at trial showed that the victim was covered with bruises, scrapes and scratches. At one point, appellant prevented the victim from breathing by placing his hand and fingers over her mouth and nose. Thus, we find that clear and convincing evidence supports this determination.
Moreover, appellant's youth and his admitted pattern of excessive drinking when considered in conjunction with his criminal history and the commission of the rape in this case is a relevant "behavioral characteristic" under R.C. 2950.09(B)(a)(j).
Accordingly, we conclude that clear and convincing evidence was offered on a number of relevant factors to demonstrate that appellant was "convicted of committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). Therefore, the trial court did not err in classifying appellant as a sexual predator, and appellant's second assignment of error is found not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Melvin L. Resnick, J.
 Peter M. Handwork, J. and Mark L. Pietrykowski, J.
CONCUR.