[Cite as *State v. Shaw*, 2011-Ohio-3331.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

STATE OF OHIO              :

                               :      Appellate Case Nos. 10-CA-23

      Plaintiff-Appellee      :

                               :      Trial Court Case No. 09-CR-296B

v.                         :

                               :      (Criminal Appeal from

ORENTHAL A. SHAW     :       Common Pleas Court)

                               :

      Defendant-Appellant    :

                               :

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of July, 2011.

. . . . . . . . . . .

ANTHONY KENDELL, Atty. Reg. #0067242, by ROBERT E. LONG, III, Atty. Reg. #0066796, Miami County Prosecutor's Office, 201 West Main street – Safety Building, Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. #0031461, 1210 Talbott Tower, 131 North Ludlow Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Orenthal A. Shaw appeals from his conviction and sentence for three counts of trafficking in drugs, in violation of R.C. §2925.03(A)(1) and R.C. §2925.03(A)(2), felonies of the fourth and fifth degrees, with a specification subjecting his vehicle to forfeiture pursuant to

R.C. §2941.1417.

{¶ 2}   On July 14, 2009, Miami County Sheriff's Deputy Jason Moore filed an affidavit and obtained a search warrant from Judge Kemmer of the Miami County Municipal Court, authorizing a search of the person of Delaquan A. Myers and a white 1989 Oldsmobile bearing license number EAL8387.   Dep. Moore was to execute the warrant within three days of issuance.

{¶ 3}   The search warrant was based on several purchases of heroin, within Miami County, from a male person who went by the street name of "Juice."   In 2005, Dep. Moore began collecting evidence of "Juice's' " drug trafficking within Miami County through intelligence reports and supervised purchases by two Confidential Informants (CI), whom the deputy considered to be reliable based on his dealings with them in the past.

{¶ 4}   On February 17 and February 25, 2009, CI #1 made a controlled purchase of crack cocaine from "Juice" at a location in Miami County. Following these narcotics investigations, detectives showed CI #1 a driver's license photograph of Delaquan Myers, whom the detective believed to be "Juice," and CI #1 positively identified him as the male he/she knew to be "Juice."

{¶ 5}   Also, on July 1 and July 8, 2009, CI #2 made a controlled purchase of heroin from "Juice" at a location within Miami County. During each of these controlled purchases, CI #1, CI #2, as well as Dep. Moore observed "Juice" driving a white Oldsmobile bearing Ohio registration EAL8387.   Dep. Moore checked LEADS information and learned that the vehicle was registered to Appellant, Orenthal Shaw, who had a listed address in the Dayton area.

{¶ 6}  On July 14, Dep. Moore received information from CI #2 that "Juice" "would be traveling to Miami County on that day, July 14, 2009, with the purpose of selling illegal drugs." (T.R. 10)   Dep. Moore incorporated this information as an attachment to his affidavit to obtain a search warrant.   After the search warrant was obtained, Dep. Moore had his CI #2 contact "Juice," and the CI ordered heroin, which was to be delivered to Miami County. (T.R. 11). Meanwhile, Dep. Moore set up surveillance points on I-75 leading north toward the location for CI #2 to make the purchase and on the exit ramp in Tipp City. Shortly thereafter, officers identified the suspect vehicle on the highway.   Since the search warrant included the white '89 Oldsmobile, the police followed it, but could not see the occupants inside.

{¶ 7}  The surveillance team stopped the Oldsmobile at 2:16 p.m.   When Moore opened the doors of the Oldsmobile, he smelled a strong odor of burnt marihuana from the interior. At about 2:19, a female, later identified as Crystal Works, removed herself from the driver's seat, while Appellant, Orenthal Shaw, removed himself from the passenger seat.

{¶ 8}  Dep. Moore and the accompanying officers searched the vehicle but found no contraband.   Dep. Moore then instructed CI #2 to call the number he had for "Juice."   In doing so, Dep. Moore observed one of the cell phones in the passenger seat ringing with CI #2's phone number in the caller ID window.   Being almost certain heroin was located on either Shaw or Works' person, Dep. Moore searched Shaw, but found nothing.   He then handcuffed Shaw and placed him in the back of a cruiser. Due to Works' gender, Dep. Moore lightly searched her and placed her in the back of the cruiser while he waited for Deputy Fraley, a female, to conduct a more thorough search of her. Deputy Fraley arrived at the scene at 2:42 p.m.   When Fraley searched Works, she found a clear plastic bag in the back of her

underwear containing twenty-five capsules of suspected heroin .

{¶ 9} Works stated the drugs were Shaw's. Moore told Shaw he was under arrest, read him his *Miranda* rights, and Shaw indicated he understood the rights. Shaw then proceeded to make incriminating statements including that he is referred to as "O.J." and "Juice" on the street, the heroin capsules were his, and he had been smoking marihuana earlier.

{¶ 10} Shaw was arrested and charged with trafficking in drugs in three counts of a Miami County indictment. On April 16, 2010, the trial court overruled a motion to suppress for violations of the Fourth Amendment and Article I, Section 14 of the Ohio Constitution. On June 14, 2010, pursuant to a plea bargain, Shaw entered a plea of no contest to two counts of trafficking in drugs, each a felony of the fourth degree, and one count of trafficking in drugs, a felony of the fifth degree. The trial court sentenced Shaw to one year in prison on each count, to run concurrently, along with a three year driver's license suspension, three years of post release control and forfeiture of his '89 white Oldsmobile pending appeal. Shaw appealed.

{¶ 11} In a single assignment of error, Shaw alleges:

{¶ 12} "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING HIM HIS CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT OF THE FEDERAL CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION, BY OVERRULING HIS MOTION TO SUPPRESS AND UPHOLDING THE ILLEGAL POLICE STOP, SEARCH AND SEIZURE IN THIS MATTER."

{¶ 13} Shaw contends the court should suppress the evidence held against him for four reasons. First, he asserts the stop of the '89 white Oldsmobile was illegal because it was based on an anticipatory search warrant that was invalid on its face and there was no probable cause. Second, Shaw contends the search of himself and Ms. Works was also unconstitutional due to a lack of warrant or probable cause. Third, Shaw contends even if the stop and search were legal, the detention was unconstitutionally prolonged; and last, the heroin found on Ms. Works should be suppressed since the stop and search were both unconstitutional.

{¶ 14} In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. *State v. Purser,* Greene App. No.2006 CA 14, 2007–Ohio–192, ¶ 11. The trial court is in the best position to resolve questions of fact and evaluate witness credibility. Id. Thus, "[a]n appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence." (Internal citations omitted)." Id.

{¶ 15} The Fourth Amendment to the U.S. Constitution protects individuals from unreasonable search and seizures. State v. Lewis, Montgomery App. No. 22726, 2009-Ohio-158, ¶ 20, citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d. Violations of the Fourth Amendment require courts to apply the exclusionary rule, suppressing use of any evidence that was illegally obtained.

{¶ 16} Shaw first asserts this was an anticipatory warrant issued without merit. We

disagree. This was not an anticipatory warrant. "An 'anticipatory warran'" is one based upon an application showing probable cause that at some future time, but not presently, certain evidence of a crime will be located at a specific place to be searched." *State v. Folk* (1991), 74 Ohio App.3d 468, 472.

{¶ 17} Dep. Moore's affidavits accompanying the search warrant indicate there was a high degree of certainty that the '89 white Oldsmobile was being used for drug trafficking and that contraband was located inside the vehicle. The controlled purchases made by CI #1 and CI #2, along with Dep. Moore's intelligence reports, all demonstrate that the events necessary to obtain a valid search warrant were not anticipatory, but had already occurred on several occasions. The trial court correctly concluded that this was not an anticipatory warrant because the search was not conditioned on any predetermined future event.

{¶ 18} Shaw alternatively contends that even if the search warrant was valid, probable cause ended at the scene since all of the conditions of the search warrant were not met when the police stopped the white Oldsmobile. We disagree.

{¶ 19} "The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures, unless an exception applies." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. The automobile exception is well recognized. "If a law enforcement officer has probable cause to believe that a vehicle contains contraband, he may search a validly stopped motor vehicle based on the automobile exception to the warrant requirement. *Maryland v. Dyson* (1999), 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442." *State v. Arnold*, Clark App. No. 2001 CA 55, 2002-Ohio- 1779 ¶ 7. Probable cause to search an automobile has been defined as "a belief reasonably arising out

of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *State v. Kessler* (1978), 53 Ohio St.2d 204, 208, quoting *Carroll v. United States* (1925), 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543. Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be a 'fair probability' that the object they see [or feel] is illegal contraband or evidence of a crime." *State v. Jones,* Montgomery App. No. 19248, 2002–Ohio–4681, ¶ 10. Analyzing whether the police had probable cause to search in any given situation requires us to review the "totality of the circumstances." *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10.

{¶ 20} In the present case, both the presence of the vehicle traveling into Miami County and Shaw's suspicious behavior were apparent to the police officers at the scene. Not only was the '89 white Oldsmobile named in the search warrant, but there was probable cause to believe the vehicle was being used for drug trafficking. Law enforcement knew that the purpose of the vehicle being in Miami County was for an ordered delivery of heroin. CI #2 arranged to purchase the heroin from a person whose connection was verified when CI#2 called and the defendant's cell phone rang while the vehicle was being searched. Additionally, although Shaw was not the person specifically named in the warrant (i.e. Delaquan A. Myers), the vehicle being used for drug trafficking belonged to Shaw. Also, the vehicle smelled of burnt marijuana. Furthermore, since the detectives knew CI #2 planned to purchase heroin that day from "Juice" driving this vehicle, an officer could reasonably conclude that because no drugs were found in the vehicle, the driver or passenger likely had the heroin concealed on their person. The totality of these circumstances reasonably gave

authorities probable cause to believe that appellant was engaged in criminal activity, and therefore, stop and search the vehicle, as well as Shaw and Works.

{¶ 21} Shaw also raises the assertion that even if the stop were valid, it was unreasonably prolonged, which is a violation of the Fourth Amendment. Again, we disagree.

{¶ 22} A detention, or specifically a traffic stop, is entitled to last long enough to accomplish the original purpose of the stop. See generally *State v. Chatton* (1984), 11 Ohio St.3d 59.

{¶ 23} The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229. Here, the purpose of the stop was the seizure and search of the Oldsmobile. Because no heroin was found in the vehicle, it could reasonably be concluded that heroin was on either Shaw or Works' person. Shaw was searched, and no heroin was located on him. However, due to Ms. Works' gender and Dep. Moore's knowledge that drug traffickers often hide drugs on female bodies to avoid detection from law enforcement, a female detective had to come search her. We believe the officers had probable cause to extend Shaw's detention for a reasonable time until Works was searched. Shaw was detained less than thirty minutes awaiting Dep. Fraley, a female detective, to arrive at the scene and search Ms. Works. We find that the traffic stop and the detention of Shaw were reasonable and not unconstitutionally prolonged.

{¶ 24} Last, Shaw asserts the evidence found on Ms. Works' person should be

suppressed since it was illegally obtained. We do not need to address whether the stop, search and seizure were legal as to Crystal Works. "Fourth Amendment rights are personal in nature, and they may not be asserted vicariously by third parties." *State v. Green*, Greene App. No. 2007-CA-2, 2009-Ohio-5529, ¶ 5a*, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387. An individual must have standing to challenge the legality of a search or seizure. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622. Moreover, the person challenging the search bears the burden of proving standing. *State v. Williams,* 73 Ohio St.3d 153, 1995-Ohio-275. That burden is met by establishing that the person has an expectation of privacy in the place searched that society's prepared to recognize as reasonable. Id.; Rakas v. Illinois, supra. Property ownership is only one factor to be considered. *U.S. v. Salvucci* (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619; see, also, *State v. Nevins* Montgomery App. No. 24070, 2011-Ohio-389.

{¶ 25} The state raises the issue of standing for the first time in its brief on appeal. However, the defendant's Motion to Suppress did not specifically challenge the separate constitutionality of the personal search of Works, as opposed to a fruit-of-the-poisonous-tree argument. So, the state was not put on notice that standing could be an issue. Normally, when standing is not raised at the trial level, we will not consider the issue on appeal. This is for at least two reasons. First, to give the defendant the opportunity to develop a record by presenting evidence of standing; and second, to give the trial court the opportunity to make any factual determinations involved. The body of case law on this subject deals with the search of another's premises, residence, automobile or personal property. None of these

property search concerns apply here. Here, there was a personal search of another and the argument that the search was independently unconstitutional was first raised by the defendant on appeal. Moreover, the facts are not in dispute that the drugs were removed from the person of the driver, Works.

{¶ 26} It is fundamental that Fourth Amendment rights are personal and may not be raised by another. *Rakas*, supra. There is no conceivable set of circumstances under which Shaw could claim that he has a reasonable expectation of privacy in "a bag being pulled out of the back pants of Crystal Works." (T.R. 27). Accordingly, we determine that although Shaw can challenge the stop of the vehicle and the reasonableness of the length of his detention, he has absolutely no standing to challenge the personal search of Crystal Works or the suppression of the drugs removed from her, which he acknowledged were his.

{¶ 27} Despite the fact that the heroin capsules found on Ms. Works' person were acknowledged to be Shaw's property, that claim of ownership alone is insufficient to satisfy the burden of standing under the Fourth Amendment. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, supra, at 134. Shaw has no expectation of privacy as to Ms. Works' person and, thus, lacks standing to separately challenge the constitutionality of the search of her person. Only Ms. Works has proper standing to raise this issue. Accordingly, the decision of the trial court is affirmed based on the search warrant, probable cause and lack of standing.

{¶ 28} The sole assignment of error is overruled.

{¶ 29} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN and DONOVAN, JJ, concur.

Copies mailed to:

Anthony Kendell
Robert E. Long, III
Daniel J. O'Brien
Hon. Christopher Gee