OPINION
Defendant-appellant, Michael W. Benge, appeals a decision of the Butler County Court of Common Pleas in which the court dismissed his petition for postconviction relief without holding an evidentiary hearing. We affirm.
On February 1, 1993, Judith Gabbard, appellant's live-in girlfriend, was found beaten to death near the bank of the Great Miami River in Hamilton, Ohio. The police sought appellant in order to question him about Gabbard's death. As appellant was approached by police on the street, he dropped an automated teller machine ("ATM") bank card that had belonged to Gabbard.
Appellant was arrested and taken to the police station where he gave a statement to police concerning Gabbard's death, detailing a story that he and Gabbard had been accosted by two men who killed Gabbard and attempted to steal her ATM card. A few hours later, appellant indicated that he wished to give another statement to the police. In his second statement, appellant recanted his previous statement and admitted killing Gabbard. According to appellant, he and Gabbard had an argument and he killed her in anger after she tried to run him over with her car. Appellant denied stealing Gabbard's ATM card and insisted that he had her permission to use the card whenever he wanted and had used it frequently in the past.
Appellant was indicted on March 10, 1993 for one count of aggravated murder in violation of R.C. 2903.01(B) with specifications under R.C. 2929.04(A)(3) (offense committed for the purpose of escaping detection for another offense) and R.C.2929.04(A)(7) (offense committed during the commission of an aggravated robbery) and one count of aggravated robbery in violation of R.C. 2911.01(A)(2). A jury trial was held, and the jury found appellant guilty as charged of aggravated murder with specifications and aggravated robbery. Appellant was also convicted of one count of gross abuse of a corpse in violation of R.C. 2927.01 based on a pretrial no contest plea. After a penalty phase hearing on June 1, 1993, the jury recommended that a sentence of death be imposed for the aggravated murder charge. The trial court accepted the jury's verdict and sentenced appellant to death. The trial court also imposed a sentence of ten to twenty-five years for the aggravated robbery offense, to be served consecutively with the sentence of death and concurrently with the one-year sentence previously imposed for the gross abuse of a corpse charge. State v. Benge (Dec. 5, 1994), Butler App. No. CA93-06-116, unreported, at 2-4.
Appellant's convictions and imposition of the death penalty were upheld on direct appeal to this court. Id. The convictions and imposition of the death penalty were also upheld on appeal to the Ohio Supreme Court. State v. Benge (1995), 75 Ohio St.3d 136. The United States Supreme Court denied appellant's petition for writ of certiorari. State v. Benge (1996), 519 U.S. 117 S.Ct. 224.
On September 20, 1996, appellant filed a petition for postconviction relief asserting fifteen claims for relief. On September 24, 1996, the state of Ohio, plaintiff-appellee herein, filed an answer denying the allegations of the petition and moving to dismiss the petition. Appellant filed a response to the state's motion to dismiss and also filed motions for discovery and for disclosure of transcripts of the grand jury testimony in the matter. Oral arguments were heard on November 14, 1996 by the original trial judge. A decision was issued on March 4, 1997, dismissing claims three through fifteen without an evidentiary hearing. As to appellant's first and second claims for relief, the trial court found that dismissal was not appropriate and allowed limited discovery to be conducted.
On March 7, 1997, the state filed a motion for summary judgment on appellant's first and second claims for relief. On July 14, 1997, the trial court granted the state's motion for summary judgment on these claims and dismissed all of appellant's postconviction claims. On appeal, appellant asserts five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WITHOUT AN EVIDENTIARY HEARING ON APPELLANT'S 1ST AND 2ND CLAIMS FOR RELIEF IN VIOLATION OF THE 5TH, 6TH, 8TH, 9TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
Appellant raises two distinct issues in his first assignment of error: (1) the prosecutor's alleged suppression of material evidence favorable to appellant, and (2) ineffective assistance of counsel. First, we will set forth the applicable law dealing with postconviction relief. R.C. 2953.21 provides in pertinent part:
 (A)(1) Any person convicted of a criminal offense or adjudged a delinquent child and who claims that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.
However, a criminal defendant is not automatically entitled to an evidentiary hearing on his claims. State v. Jackson (1980),64 Ohio St.2d 107. The petitioner must show that there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case. Id. A petition for postconviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. State v. Perry (1967), 10 Ohio St.2d 175.
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceedings except on appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
Id., paragraph nine of the syllabus.
There is an exception to the doctrine of res judicata where the petitioner presents competent, relevant, and material evidence dehors the record that was not in existence and available to the petitioner in time to support the direct appeal. State v. Lawson (1995), 103 Ohio App.3d 307, 315. This evidence must be genuinely relevant, and it must materially advance a petitioner's claim that there has been a denial or infringement of his constitutional rights. State v. Lawson, following State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported. Additionally, when arguing ineffective assistance of counsel, appellant "bears the initial burden in a postconviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." (Emphasis sic.) State v. Jackson, 64 Ohio St.2d 107,111. In reviewing a trial court's decision with respect to a postconviction relief petition, our standard of review is whether the trial court abused its discretion. State v. Allen (Sept. 23, 1994), Lake App. No. 93-L-123, unreported, at 4.
A prosecuting attorney may move for summary judgment in postconviction proceedings pursuant to R.C. 2953.21(D), which provides in part:
 Within twenty days from the date the issues are made up, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.
If a motion for summary judgment is made, the trial court must satisfy the procedural requirements of Civ.R. 56. State v. Milanovich (1975), 42 Ohio St.2d 46, 51-52. Upon such a motion for summary judgment, the trial court is required to review the pleadings, affidavits, files and other records to determine whether there is a genuine issue as to any material fact, and whether a substantial constitutional issue is established. Id. at paragraph two of the syllabus. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issues of material fact." Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248,106 S.Ct. 2505, 2510 (emphasis sic). A fact is "material" only if it has the potential to affect the outcome, and a dispute is "genuine" only if it allows reasonable minds to find in favor of the nonmoving party. Id.
This court has held that summary judgment in favor of the state and against a defendant-petitioner in postconviction proceedings is proper under Civ.R. 56 when (1) the state is entitled to judgment as a matter of law, (2) the state points to affirmative evidence showing no genuine issue as to any material fact, and (3) reasonable minds could come to but one conclusion, which is adverse to the defendant-petitioner against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. State v. DePew (1994), 97 Ohio App.3d 111,113.
First claim for relief
Appellant's first claim for relief in his petition for postconviction relief alleges that his right to a fair trial and due process of law under the Federal and Ohio Constitutions was violated by the prosecutor's alleged suppression of material evidence favorable to appellant. This testimony was the statement and grand jury testimony of John Fuller, a witness who testified at the grand jury, but did not testify at trial. However, Fuller's fiance, Awantha Shields, did testify at trial. Shields testified that in the early morning hours of February 1, 1993, appellant arrived at the home she shared with Fuller, wearing wet clothes and asking for Fuller. Shields informed appellant that Fuller was not home, but admitted appellant into the home anyway. Shields testified that after she admitted appellant into the home appellant asked her if she had ever killed anyone. Appellant then told her that he and Gabbard had "gotten into it" earlier, that it blew over and that they went to the river bank. Appellant then told Shields that he and Gabbard had started fighting again and that he had hit her in the head no more than ten times with a crowbar, put rocks over her head and pushed her in the river. Appellant then stated to Shields that he had killed Gabbard for her ATM card. Shields testified that Fuller was not home when these conversations took place, but that at some point later Fuller did arrive home.
In his petition for postconviction relief, appellant attached an affidavit from Fuller, dated in August 1996, which states that Fuller was home at the time appellant arrived at the home Fuller shared with Shields, and that at no time was appellant alone with Shields. Fuller further stated that he never heard appellant say that he killed Gabbard for her ATM card. Fuller further stated that he testified to these same facts during the grand jury hearing. Appellant's claim is that Fuller's contradiction of Shield's testimony was material and exculpatory, that the prosecutor knew what Fuller's grand jury testimony was and therefore the prosecutor improperly withheld material which would have impeached the trial testimony of Shields.
Based on Fuller's affidavit, the trial court denied the state's motion to dismiss on appellant's first claim for relief and ordered limited discovery, including the disclosure of Fuller's grand jury testimony pursuant to Crim.R. 6(E). The trial court further permitted the depositions of Fuller and Craig D. Hedric, appellant's original trial counsel, to be taken, filed, and considered.
The relevant question is whether Fuller's grand jury testimony was favorable to appellant and material to guilt or punishment and therefore should have been disclosed by the prosecutor pursuant to Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194. A due process claim under Brady cannot be maintained in the absence of a showing of prejudice, i.e.: that the government's action deprived the accused of evidence that was favorable and material. United States v. Valenzuela-Bernal (1982),458 U.S. 858, 872-873, 102 S.Ct. 3440, 3449.
Accordingly, in order for appellant to overcome the state's motion for summary judgment, appellant would have to show that Fuller gave testimony favorable to appellant at the grand jury, that the prosecution breached a duty to disclose such evidence, and that the nondisclosure was prejudicial. The trial court reviewed Fuller's statement made to the police on February 22, 1993, Fuller's grand jury testimony of March 3, 1993, Fuller's affidavit from August 1996, and Fuller's deposition taken on May 6, 1997.
In his written statement to police, Fuller described the incriminating statements made by appellant regarding the killing of Gabbard. Fuller further stated that he was home when appellant arrived at the house. However, later in the statement, Fuller said that he "could have missed some of Mike's conversation when he came to the house as I was asleep and I was trying to get awake when he was telling the story about killing her."
Fuller told the grand jury that on February 1, 1993, he came home at about 4:00 in the morning. Fuller said that he had been out, and had told Shields that he had been at his mother's house in Middletown, Ohio. Fuller testified that when he came home, Shields appeared to be asleep on a sofa-bed, and appellant was inside his house, sitting in a rocking chair and wearing some of Fuller's clothes. Fuller testified that he "almost hit the roof" when he saw appellant wearing his jean jacket. Fuller testified that appellant then asked to speak with him outside of the presence of Shields, where appellant proceeded to tell Fuller that he had killed Gabbard. Fuller testified that he asked appellant why he killed Gabbard, and appellant just shrugged.
Fuller's affidavit executed in August 1996, stated that at no time was appellant alone with Shields, and that appellant had never stated in Fuller's presence that he had killed Gabbard for her ATM card. In his 1997 deposition, Fuller was adamant that he was "confused" and could not presently remember whether he was present with Shields at all times when appellant was in their home on that night. Fuller recognized that this statement differed from his grand jury testimony and his affidavit, but stated that he was trying to tell the truth to the best of his ability at all times. Fuller stated that he had no reason to change what he said in his statement to police or at the grand jury. In his deposition, Fuller reaffirmed that he became upset when he saw that Shields had given his jean jacket to appellant. Fuller further reasoned that because he would have interfered with Shields had he been present when she gave the jacket to appellant, that there was in fact some period of time when Shields was alone with appellant outside of Fuller's presence, when there could have been a conversation to which Fuller was not a party.
Throughout Fuller's statement, grand jury testimony, and deposition, the trial court found the following consistencies regarding appellant's opportunity to tell Shields something to which Fuller was not a party after appellant arrived at the home of Fuller and Shields: Fuller either (1) was present but "could have missed some of [appellant's] conversation when he came to the house;" (2) was not present when appellant arrived but came home later to discover appellant in a rocking chair wearing Fuller's jean jacket; or (3) Fuller was in the house when appellant arrived, but there was some interaction between Shields and appellant outside of Fuller's presence resulting in Shields allowing appellant to wear Fuller's jean jacket.
Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, a defendant has a due process right to disclosure of material evidence which is favorable either to guilt or punishment. In determining the materiality question, suppressed evidence is deemed material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley (1985), 473 U.S. 667,682, 105 S.Ct. 3375.
Based on the evidence presented, we find that appellant has not shown that Fuller's statement to police and grand jury testimony were favorable to appellant. Fuller's testimony would not have served to impeach Shields, but instead would have bolstered her testimony that when she and appellant were alone (at some point) appellant told her that he killed Gabbard for her ATM card. Furthermore, to the extent that Fuller's August 1996 affidavit is completely contradicted by his own sworn testimony, the affidavit lacks credibility. The affidavit is in the nature of recanted prior testimony and such recantation is "ordinarily unreliable and subject to closest scrutiny." State v. Moore (1994), 99 Ohio App.3d 748, 755, following Taylor v. Ross (1948),150 Ohio St. 448 at syllabus. Accordingly, we find that the trial court did not abuse its discretion and properly granted summary judgment to the state finding nothing favorable or material in the constitutional sense about Fuller's grand jury testimony. Beyond any doubt, reasonable minds could only conclude that there was no violation of the principles of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194.
Second claim for relief
In appellant's second claim, he contends that he was denied effective assistance of counsel by reason of his counsel's dual representation of appellant and Fuller. One of appellant's trial counselors, Craig D. Hedric, also represented Fuller in an unrelated criminal matter at the time of appellant's trial. Appellant supports this proposition with an affidavit from Fuller attached to his petition for postconviction relief in which Fuller states that Hedric "came to ask me questions about [appellant's] case. I tried to ask Hedric about my pending drug case, but he only wanted to talk about [appellant's] case. I refused to talk about [appellant's] case because I was angry with Hedric for neglecting my case." Fuller's refusal to talk to Hedric allegedly resulted in a failure of counsel to discover favorable evidence by which Fuller would have impeached Shield's claim that she was alone with appellant.
In order to overcome a motion for summary judgment, appellant must show that Hedric's dual representation was "an actual conflict of interest adversely affect[ing] his lawyer's performance." Cuyler v. Sullivan (1980), 446 U.S. 335, 348,100 S.Ct. 1708. A review of the record indicates that Fuller and appellant's cases were completely unrelated. Accordingly, we concur with the trial court's finding that there was no conflict of interest in Hedric's representation of Fuller and Hedric. Furthermore, pursuant to our discussion of appellant's first claim, even if Hedric had spoken with Fuller, Fuller's testimony would have inculpated rather than exculpated appellant. For these reasons, the trial court properly granted the state's motion for summary judgment as there is no evidence of an actual conflict of interest adversely affecting Hedric's representation of appellant at trial.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S 3RD, 4TH, 5TH, 8TH, 9TH AND 10TH CLAIMS FOR RELIEF REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL WITHOUT FIRST GRANTING DISCOVERY AND AN EVIDENTIARY HEARING IN VIOLATION OF THE 5TH, 6TH, 8TH, 9TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SEC. 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
Third claim for relief
Appellant's third claim for relief asserts that he was denied effective assistance of counsel by counsel's failure to obtain certain bank records, which were obtained subsequent to trial, which show appellant using Gabbard's ATM card in Gabbard's presence three months before the murder. Appellant asserts that this evidence would have demonstrated that he and Gabbard shared access to the card and that he did not have to steal it from her.
As stated, when arguing ineffective assistance of counsel, appellant "bears the initial burden in a postconviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." (Emphasis sic.) State v. Jackson, 64 Ohio St.2d 107,111. The trial court found that counsel's failure to obtain and use this evidence did not result in prejudice to appellant because the evidence is simply cumulative to evidence presented at trial by the defense. A review of the record fails to show how appellant was prejudiced by counsel's failure to obtain this cumulative evidence. We find that the trial court properly dismissed appellant's third claim for failure to present sufficient operative facts demonstrating substantive grounds for relief. State v. Jackson, 64 Ohio St.2d 107.
Fourth and Eighth claims for relief
In his fourth claim for relief, appellant asserts that he was denied the effective assistance of counsel under the standards of Strickland v. Washington (1986), 466 U.S. 668, 104 S.Ct. 2052, based on the allegations that his trial counsel did not obtain the services of a clinical psychologist to testify at both the guilt and penalty phases of his trial. In his eighth claim for relief, appellant asserts that his trial counsel were ineffective for failing to obtain and present the testimony of a drug abuse expert at the mitigation phase of appellant's trial. Appellant supports these assertions with the report of Dr. Robert L. Smith, Ph.D., which was attached to appellant's petition for postconviction relief.
A review of the record reveals that trial counsel did call a clinical psychologist, Dr. Roger H. Fisher, Ph.D., to testify on appellant's behalf at the penalty phase of the trial. "A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial." State v. Combs (1994), 100 Ohio App.3d 90,103. The trial court found that Dr. Smith's report was cumulative of or alternative to the expert testimony presented at the penalty phase by the trial attorneys and therefore, such testimony was simply a repackaging of information available at trial and does not constitute sufficient evidence demonstrating substantive grounds for relief. After a review of the record, we concur with the trial court and find that the trial court did not abuse its discretion in denying appellant's fourth and eighth claims for relief.
Fifth and Ninth claims for relief
Appellant asserts that he was denied the effective assistance of counsel based on the allegation that his trial counsel did not present testimony from friends and family that appellant and Gabbard had a history of a violent relationship. In support of this claim, appellant attached to his petition for postconviction relief affidavits from friends and relatives. The trial court found that evidence of a historically stormy relationship between an offender and victim and the victim's bumping of his car were deemed insufficient, as a matter of law, to incite the offender to the use of deadly force and thus warrant a voluntary manslaughter instruction. State v. Deem (1988), 40 Ohio St.3d 205,211. The trial court reasoned that as such, the evidence of a stormy relationship between appellant and Gabbard would have added little to the defense theory of the case. Furthermore, the trial court noted that much of the material in the affidavits consisted of hearsay, merely reiterations of statements by appellant himself or by other persons other than the affiant, which would be inadmissible and would fall short of the evidentiary requirements necessary to merit postconviction relief. State v. Moore (1994), 99 Ohio App.3d 748. A review of the record supports the trial court's conclusion that pursuant to the Strickland standard, appellant has failed to show how failure of trial counsel to use this evidence prejudiced appellant's defense. The trial court properly denied appellant's fifth and ninth claims for relief.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S 6TH, 7TH, 11TH, 12TH, 13TH AND 15TH CLAIMS FOR RELIEF WITHOUT FIRST GRANTING DISCOVERY AND AN EVIDENTIARY HEARING IN VIOLATION OF THE 5TH, 6TH, 8TH, 9TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 2, 5, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
Sixth claim for relief
Appellant asserts that the trial court erred in overruling his motion for a judgment of acquittal pursuant to Crim.R. 29(A) on the basis that the evidence supporting his commission of aggravated robbery, as an element of aggravated murder, was insufficient. In support of this proposition, appellant argues that the affidavit of Fuller shows that there was insufficient evidence to prove beyond a reasonable doubt that appellant committed an aggravated robbery or an aggravated murder. However, pursuant to our discussion of appellant's first claim for relief, appellant has failed to provide sufficient evidence to overcome the res judicata bar. A review of the record reveals that the trial court properly found that this claim was clearly barred by the doctrine of res judicata as this same issue was raised both on appellant's direct appeal to this court and on his appeal to the Supreme Court of Ohio. See, State v. Benge, Butler App. No. CA93-06-116, unreported, at 19-22, and State v. Benge, 75 Ohio St.3d 136,142-143. Following State v. Perry, 10 Ohio St.2d 175, the trial court properly denied appellant's sixth claim for relief.
Seventh claim for relief
Appellant claims that the trial court erred in overruling his motion for a mistrial following outbursts from Gabbard's family during the court of his trial. Appellant supports this claim with an affidavit from his uncle, William Chandler, giving the opinion that the outbursts from the members of Gabbard's family during the trial had a negative impact on the jury.
The trial court found, and we concur, that this claim is clearly barred by the doctrine of res judicata as this same claim was addressed by the Supreme Court and this court on appellant's direct appeals.
Eleventh and Twelfth claims for relief
Appellant asserts in his eleventh claim for relief that the capital sentencing instructions provided to the jury in the penalty phase of the trial were improper and unconstitutional. Appellant's twelfth claim asserts that the guilt phase instructions provided to appellant were improper and unconstitutional. In support of these propositions, appellant included in his petition for postconviction relief an unidentified "appendix," which provides an analysis of the language used in Ohio Jury Instructions.
A review of the record confirms the trial court's conclusion that this claim was raised on direct appeal to this court and the Supreme Court and is therefore barred by res judicata. Furthermore, the evidence dehors the record submitted by appellant fails to meet the evidentiary standards required by State v. Jackson, 64 Ohio St.2d 107.
Thirteenth claim for relief
Appellant asserts that the proportionality review of death sentences undertaken pursuant to R.C. 2929.05(A) by a reviewing court in Ohio is constitutionally inadequate. The trial court held that it had no jurisdiction to consider this claim as it raised an issue concerning the judgment of a reviewing court. See State v. Murnahan (1992), 63 Ohio St.3d 60. We agree that the trial court, as an inferior court, had no jurisdiction to review the acts or decisions of superior court. State v. Powell (1993),90 Ohio App.3d 260, 267.
Furthermore, appellant raised this same issue in his direct appeal to this court. See State v. Benge, Butler App. No. CA93-06-116, unreported, at 61-62. This claim is clearly barred by res judicata in that the issue was raised on direct appeal, and therefore appellant is barred from relitigating this issue in a postconviction proceeding. State v. Szefcyk (1996), 77 Ohio St.3d 93. The trial court did not err in denying appellant's thirteenth claim for relief.
Fifteenth claim for relief
In his fifteenth claim for relief, appellant argues that the cumulative effect of the errors alleged in his petition render his convictions and death sentence unreliable and constitutionally infirm. In State v. DeMarco (1987), 31 Ohio St.3d 191, the Supreme Court recognized the doctrine of cumulative error. "Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995), 74 Ohio St.3d 49, 64. The doctrine of cumulative error is not applicable to the case at bar as we have found no merit in appellant's claims of trial court error. The trial court properly denied appellant's fifteenth claim for relief.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN FAILING TO GRANT RELIEF OR DISCOVERY AND AN EVIDENTIARY HEARING ON THE 14TH CLAIM THAT THE USE OF ELECTROCUTION AS A METHOD OF EXECUTION VIOLATES THE EIGHTH AMENDMENT GUARANTEE AGAINST CRUEL AND UNUSUAL PUNISHMENT.
Fourteenth claim for relief
Appellant asserts that the use of electrocution as a method of capital punishment constitutes cruel and unusual punishment. In support of this proposition, appellant attached to his petition for postconviction relief voluminous materials which attempt to illustrate the horrors of execution. However, the Supreme Court of Ohio has expressly held that execution by electrocution is not cruel and unusual punishment. State v. Coleman (1989), 45 Ohio St.3d 298,308. Furthermore, the United States Supreme Court has declined to review the issue of whether electrocution is cruel and unusual punishment in Poyner v. Murray (1993), 508 U.S. 113
S.Ct. 2397. Accordingly, the trial court did not err in denying appellant's fourteenth claim for postconviction relief.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION AND DISMISSING HIS POSTCONVICTION PETITION WITHOUT GRANTING DISCOVERY OR A HEARING.
Appellant presents five issues in his final assignment of error. In his first issue, appellant contends that R.C. 2953.21
and Ohio's postconviction proceedings are unconstitutional because they do not provide an adequate corrective process. However, a review of the record reveals that appellant did not assert this claim in his petition for postconviction relief and failed to raise this issue at the trial court level. We will not address the constitutionality of a statute where the issue was not raised in the trial court. State v. Loza (Oct. 13, 1997), Butler App. No. CA96-10-214, unreported, at 21-22. Furthermore, R.C. 2953.21 has been held to be constitutional. State v. Sklenar (1991), 71 Ohio App.3d 444, 449.
In his second issue, appellant argues that the petition set forth sufficient facts which taken as true alleged significant violations of appellant's constitutional rights. We have addressed this argument in appellant's previous assignments of error and refrain from repeating our analysis herein.
In his third issue, appellant argues that the doctrine of res judicata cannot be used to bar his claims as he presented evidence dehors the record. Appellant asserts that the trial court's reliance on State v. Perry, 10 Ohio St.2d 175, is misplaced because in Perry, the petition did not contain evidence dehors the record and made no claim of other evidence. However, as in appellant's first claim, appellant failed to raise this issue at the trial court and is barred from raising it on appeal. See State v. Loza, Butler App. No. CA96-10-214, unreported.
In his fourth issue, appellant argues that the state may not plead the affirmative defense of res judicata in a motion to dismiss made pursuant to Civ.R. 12(B), by which a trial court is limited to a review of the pleadings. However, it is well-settled that although the rules of civil procedure generally apply to postconviction proceedings, dismissals rendered under R.C.2953.21 are different from those made under Civ.R. 12(B). State v. Lawson, 103 Ohio App.3d 307, 313.
 For example, unlike Civ.R. 12(B), R.C. 2953.21
requires the court to look beyond the petition and specifically allows the prosecution to respond by motion rather than answer. Because postconviction proceedings are statutorily created, specific requirements set out by statute take priority where they conflict with the Civil Rules.
Id. Therefore, the state could properly rely on the doctrine of res judicata as a defense to appellant's petition for postconviction relief.
Appellant's fifth claim for relief alleges that he met the pleading requirements to entitle him to an evidentiary hearing on all of his claims. We have addressed this argument in our discussions of appellant's assignments of error and will not repeat our analysis in a summary form. Appellant's fifth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.