OPINION
Defendant-appellant Robert Watson appeals his conviction and sentence in the Stark County Court of Common Pleas on one count of murder. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On January 21, 1997, Ernest Dadisman observed the owner of the Twelfth Street Market, Ziad Kutdut, arguing with a store patron, who was later identified as appellant. Appellant became angry, began swearing at Kutdut, and asked him to take the disagreement "outside". Kutdut directed appellant to the door and exited the store with him. Appellant continued to insult Kutdut as they exited the store.
Across the street, Scott Hazzard heard the sound of an argument and turned to see two persons arguing outside the Twelfth Street Market. He observed a taller man following a shorter man from a distance of several feet. The two men faced each other with at least five feet between them. Hazzard noted the taller man's hands were open and at his side. He did not observe the taller man make any threatening motions toward the smaller man.
Hazzard observed the shorter man pull a gun from his jacket and shoot the taller man. As the taller man hunched over, the shorter man fired another shot toward him. Hazzard then fled the scene in order to avoid being shot. Hazzard indicated he may have heard another shot as he fled. Kutdut died sixteen days later from three gunshot wounds to his chest.
On February 26, 1997, the Stark County Grand Jury indicted appellant on one count of murder, in violation of O.R.C. 2903.02, with a firearm specification. At his arraignment on February 28, 1997, appellant entered a plea of not guilty.
The trial commenced on April 7, 1997. Defense counsel did not give an opening statement. After the jury was empaneled, one juror attempted to speak to the prosecutor. The prosecutor informed the juror she could not speak with jurors, nor could jurors speak to her. Upon questioning by the trial court, the juror indicated the conversation was not about the trial and lasted only a short time. Defense counsel did not move to have the juror removed from the panel.
At a later point in the trial, another juror reported he recognized a state witness as someone who attended his church. The juror indicated he had not seen the witness in a year and their prior association would in no way affect his judgment. Defense counsel did not move to have the juror removed from the panel.
At the close of evidence, the trial court instructed the jury on the elements of murder. Defense counsel did not request instructions on voluntary manslaughter or self-defense.
After hearing the evidence and deliberations, the jury found appellant guilty of murder. The trial court sentenced appellant to a term of life imprisonment. The conviction and sentence were memorialized in a Judgment Entry dated April 16, 1997.
It is from this conviction and sentence appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRAIL COURT ERRED WHEN IT ALLOWED THE JURY VERDICT TO STAND WHEN IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. DEFENDANT-APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 III. OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
In his first assignment of error, appellant maintains the jury verdict was against the manifest weight of the evidence. Appellant contends the record clearly reveals this homicide was committed in a fit of anger or in self-defense and; therefore, a conviction on the charge was inappropriate.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997) 78 Ohio St.3d 380,387, citing, State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
When applying the aforementioned standard of review to the case sub judice, upon our review of the entire record, we find the jury did not lose its way so as to result in a manifest miscarriage of justice.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends he was denied his constitutional right to effective assistance of counsel.
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether appellant was prejudiced by counsel's ineffectiveness.Lockhart v. Fretwell (1993), 113 S.Ct. 838, 122 L.Ed. 2d 180;Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra
at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at paragraph 3 of syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Further, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 143, quoting Strickland v. Washington,supra, at 697.
With this framework in mind, we address the claims of ineffective assistance of counsel raised by appellant in the instant case.
Appellant points to three omissions by defense counsel, which he maintains evidence the fact counsel's performance fell below an objective standard of reasonable representation, thereby prejudicing him. The omissions are as follows:
1) Defense counsel did not present an opening statement.
 2) Defense counsel did not move to excuse jurors, one for possible misconduct, the other because he attended church with a witness for the state.
 3) Defense counsel did not request jury instructions on voluntary manslaughter or self-defense.
As to the first alleged omission, defense counsel's decision not to make an opening statement may have been a matter of trial strategy and, as such, cannot be regarded as ineffective assistance of counsel. See, State v. Coleman (1989), 45 Ohio St.3d 298,308. Assuming, arguendo, counsel's failure to present an opening statement fell below an objective standard of reasonableness, appellant's claim fails under the second prong ofStrickland. Appellant has failed to demonstrate counsel's decision not to make an opening statement prejudiced him. There is no showing the result of the trial would have been different had defense counsel presented an opening statement. Accordingly, appellant's counsel was not ineffective for failing to make an opening statement.
As to the second alleged omission, appellant claims defense counsel erred by omission when he did not request the removal of two empaneled jurors. This claim also fails under the second prong of Strickland. We separately examine each incident.
The first situation involves defense counsel's failure to request removal of a juror who attempted to speak to the prosecutor. The conversation was reported in the trial record as follows:
 Ms. Walsh [prosecutor]: I just want to let the Court be aware that when I was in the lunch line one of the juror's tried to have a conversation with me and I just reminded him that they were not allowed to talk to me and I wasn't allowed to talk to them. It was the second juror from the front, from the left.
 Mr. Drake [defense counsel]: I think we should make inquiry of him, Judge.
The Court: Would you bring in Juror No. 5.
 Ms. Walsh: He asked if I was related to somebody at Aultman Hospital and I said I couldn't talk to him.
 The Court: Did you have some conversation with the Prosecutor over the lunch hour?
 Juror No. 5: Not really. I just said something about her sister. I didn't know if I had — that's all I said. She said — you know. There was nothing said.
The Court: Do you want to ask any questions?
Mr. Drake: Is that the extent of it?
 Juror No. 5: Yes, just casual. I just started to say, she said I can't talk about it.
Transcript of the Proceedings, Vol. 1, p. 80.
In light of the aforementioned dialogue between the trial court and the juror, we find no prejudice accrued to appellant as a result of the inappropriate conversation. Accordingly, appellant's counsel was not ineffective for failing to request the removal of this juror.
The second situation involves defense counsel's decision not to request Juror No. 50 be excused because this juror attended the same church as the State's witness, Officer Lazzaro. The trial court conducted the following conversation with Juror 50:
 The Court: There was some statement that you mentioned to the bailiff that you recognized some name.
 Juror No. 50: Officer Rob — his name is Rob is what I know him by, Officer Lazzaro.
 The Court: You mean the police officer who just testified?
Juror No. 50: Yes.
The Court: How do you know him?
Juror No. 50: Affiliated with him through my church.
The Court: Have you ever talked to him before?
 Juror No. 50: No. I haven't seen him for probably maybe a year, nine months.
 The Court: Are you able to fairly judge his credibility like anybody else's?
Juror No. 50: Yes.
The Court: Do you have any questions?
Ms Walsh: No.
Mr. Drake: No, your honor.
Tr., Vol. 1, p. 195.
After reviewing this conversation, we find appellant was not prejudiced as a result of the juror's prior association with the State's witness. Accordingly, appellant's counsel was not ineffective for failing to request the removal of this juror.
We now turn our attention to the third alleged omission by defense counsel. Appellant asserts defense counsel was ineffective for failing to request jury instructions on the affirmative defense of self-defense and the lesser included offense of voluntary manslaughter.
Appellant contends he was entitled to an instruction on self-defense. Appellant claims the victim threatened him and he believed the victim had a gun. Appellant further asserts he specifically described his action of self-defense to the police.
A claim of self-defense, where deadly force is used, requires the defendant to show he was not at fault in creating the situation giving rise to conflict; he had a bona-fide belief he was in serious danger of death or great bodily harm which could only be avoided by use of deadly force; and he did not violate a duty to retreat or avoid the danger. State v. Williford (1990),49 Ohio St.3d 247, 349.
Upon review of the record, we find the evidence fails to show: 1) appellant was not at fault in creating the altercation; 2) appellant had reasonable grounds to believe he was in serious danger of great bodily harm; and 3) appellant attempted to escape the conflict. For these reasons, appellant was not entitled to an instruction on self-defense. Because the evidence does not support the instruction, defense counsel's failure to request such instruction does not fall below the standard of reasonableness. As such, appellant is unable to satisfy the first prong ofStrickland.
Appellant further submits defense counsel was ineffective for failing to request a jury instruction on voluntary manslaughter. Appellant argues such instruction was proper because he was incited to great rage by the victim's words.
The crime of manslaughter requires the defendant be incited to utilize deadly force. Mere words are insufficient, as a matter of law, to justify the instruction of the jury on manslaughter.State v. Deem (1988), 40 Ohio St.3d 205, 211, 533 N.E.2d 294,300.
The record in this case reveals appellant was not sufficiently incited by the deceased to justify the use of deadly force. The evidence does not support an instruction on voluntary manslaughter. Because the evidence did not warrant an instruction on voluntary manslaughter, we find defense counsel's failure to request said instruction did not fall below an objective standard of reasonableness. Appellant has failed to satisfy the first prong of Strickland.
Accordingly, appellant's second assignment of error is overruled.
 III
The third assignment of error raises an Anders claim — all other errors manifest on the record, but not raised. See, Andersv. California (1967), 386 U.S. 738. A review of the transcript of the evidence and the record reveals no error prejudicial to appellant which would warrant a reversal of his conviction and sentence. He was not denied a fair trial.
Accordingly, we overrule the third assignment of error.
The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Reader, J. and Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.