DECISION.
After a jury trial, defendant-appellant Richard Nields was found guilty of two counts of aggravated murder and one count of aggravated robbery. Upon the jury's recommendation for the aggravated-murder counts, the trial court imposed the death sentence. Nields's direct appeal to the Ohio Supreme Court has not yet been decided.
On October 30, 1998, Nields filed a petition for postconviction relief that asserted twenty-eight claims. Fifteen of the twenty-eight claims for relief involved Nields's assertions that his trial counsel was ineffective. The remaining claims for relief challenged the following: (1) the jury's view of him in shackles; (2) the composition of Hamilton County grand juries; (3) the prosecution of capital cases in Hamilton County; (4) Ohio's postconviction procedures; (5) the constitutionality of the death penalty as cruel and unusual punishment; (6) the trial court's failure to maintain a separation of witnesses; (7) the sufficiency of the evidence on the aggravated-robbery charge; (8) the trial court's failure to inquire into the jury's exposure to media reports; (9) an unduly suggestive photo array; (10) the admission of gruesome photographs; (11) the victim's family members wearing peach ribbons in the courtroom; and (12) the state's failure to disclose favorable evidence. Nields sought an evidentiary hearing on his claims and filed requests for discovery and for expert assistance.
On June 3, 1999, the trial court determined that no evidentiary hearing was required and dismissed Nields's postconviction petition. The court also denied Nields's requests for discovery and for expert assistance. This appeal followed. Nields assigns as error (1) the trial court's dismissal of his postconviction petition, and (2) the adequacy of Ohio's postconviction procedures.
 FIRST ASSIGNMENT OF ERROR
1. First Claim for Relief
Nields claims that he was denied a fair trial because some of the jurors saw him in shackles as he was escorted by two guards into the courtroom. The trial court found that because Nields had raised this claim in his direct appeal, the claim was barred by the doctrine of resjudicata, as stated in State v. Perry (1967) 10, Ohio St.2d 175,226 N.E.2d 104, paragraph nine of syllabus:
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
 But Nields claims that because he presented evidence outside the record in support of this claim, it was not barred by res judicata. That evidence consisted of his own affidavit, as well as the affidavits of two jurors. But the mere submission of outside evidence does not, in and of itself, preclude the application of the doctrine of res judicata. See State v. Carter
(Nov. 14, 1997), Hamilton App. No. C-960718, unreported. A petition must present competent, relevant, and material evidence outside the record, and that evidence must not have been in existence or available for use at the time of trial. See State v. Gipson (Sept. 26, 1997), Hamilton App. Nos. C-960867 and C-960881, unreported, citing State v. Smith
(1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. The outside evidence must also meet a standard of cogency. Otherwise a petitioner could defeat the holding of Perry by simply attaching exhibits of marginal significance doing little to establish the petitioner's claim "beyond mere hypothesis and a desire for further discovery." State v. Hawkins (June 26, 1996), Hamilton App. No. C-950130, unreported; State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-910083, unreported.
First, we note that the submission of Nields's self-serving affidavit cannot be given weight. State v. Kapper (1983), 5 Ohio St.3d 36,448 N.E.2d 823. Second, the jurors' affidavits note only that Nields was seen in handcuffs, escorted by two guards into the courtroom. One of the jurors stated that she did not know that the handcuffed man was Nields until the second juror told her. She further noted that "[a]lthough I did not see his shackles, I believe the man was shackled at the time because of the way he was walking."
The aliunde doctrine and Evid.R. 606(B) prevent the consideration of juror affidavits unless the record provides "the foundation required to establish prima facie evidence that extraneous prejudicial information was considered by the jury." State v. Mills (Mar. 15, 1995), Hamilton App. No. C-930817, unreported. This was not the case here. We hold that Nields failed to submit evidentiary documents setting forth sufficient operative facts to demonstrate substantive grounds for relief, see Statev. Jackson (Dec. 21, 1988), Hamilton App. No. C-870884, unreported, and further that, even if Nields was seen in handcuffs, the jurors' view was harmless since they already knew from the testimony at trial that he was incarcerated. See State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481 and C-910229, unreported.
2. Second Claim for Relief
Nields claims that he was denied the effective assistance of trial counsel because counsel failed to request a curative jury instruction or an evidentiary hearing upon learning that jurors had seen Nields in handcuffs. In order to obtain a postconviction hearing on a claim of ineffective assistance of counsel, a petitioner must proffer evidence that contains sufficient operative facts to demonstrate a lack of effective assistance and resulting prejudice to the petitioner. SeeState v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169. Not only must a petitioner show that trial counsel's performance fell below a standard of reasonable representation, but he must also demonstrate that he was prejudiced by trial counsel's performance. See State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
Nields failed to proffer evidence containing sufficient operative facts to demonstrate that trial counsel's performance was deficient in any way. Furthermore, Nields could not demonstrate prejudice where the jurors already knew from the testimony of a defense expert witness, Emmett Cooper, M.D., that Nields had been incarcerated since the offenses, and that two deputies had been present in the courtroom throughout the trial.
3. Third Claim for Relief
Nields claims that he was denied the effective assistance of trial counsel because counsel failed to request the appointment of an independent pharmacologist to assist at trial and in mitigation. To substantiate this claim below, Nields presented the affidavit of a pharmacologist who contended that alcohol consumption had affected Nields's ability to consider the ramifications of his violent actions. But Nields could not have presented this evidence during the guilt phase of his trial because Ohio does not recognize a defense of diminished capacity. See State v. Wilcox (1982), 70 Ohio St.2d 182; 436 N.E.2d 523. Furthermore, we note that, in the mitigation phase, the defense presented the testimony of Dr. Cooper, a psychiatrist and pharmacologist. The defense also called Nields's sister and a recovering alcoholic to testify about Nields's alcoholism and its adverse effects. We hold that Nields failed to show that counsel was deficient in not securing another pharmacologist, and further that Nields failed to demonstrate prejudice.
4. Fourth Claim for Relief
Nields claims that counsel's failure to secure the appointment of an independent pathologist constituted ineffective assistance. At trial, the state presented evidence that Nields had told a fellow inmate that he had beaten the victim at her home, had left to go to a bar, and had returned to the home to strangle her. The state also presented the testimony of deputy coroner Paul Schrode regarding the victim's injuries and the cause of her death. CSchrode determined that fifteen minutes to six hours had elapsed between the time of a blow to the victim's eye and the time that the victim was strangled.
To support this claim below, Nields presented the affidavit of a pathologist who claimed that the time between the beating and the strangulation could not have been determined by the swelling of the eye alone. One of the two factors that this pathologist claimed could have contributed to the swelling of the victim's eye was the position of the victim's face after death. In his affidavit, the pathologist stated, "It was unclear to me if the victim was found face up or face down * * * [b]ut if she was in fact face down, the swelling around her eyes could have been accentuated by livor mortis, which is a natural settling of blood that occurs after death." The evidence at trial directly refuted this conclusion, in that police officers had found the victim lying "face up."
Also, at trial, the defense called a neurosurgeon who testified that a person with the victim's degree of injury would have been unconscious for only seconds or minutes. Nields failed to proffer evidence containing sufficient operative facts to demonstrate a lack of effective assistance of trial counsel in this respect and resulting prejudice.
5. Fifth and Sixth Claims for Relief
Nields claimed below that his conviction and sentence were void or voidable because the foreman selection process for Hamilton County grand juries was biased, and because minorities were underrepresented on Hamilton County grand juries. Not only were the exhibits attached in support of this claim completely irrelevant, but they also presented evidence that was available at the time of trial. Therefore, the trial court properly denied these claims. See State v. Mills (Mar. 15, 1995), Hamilton App. No. C-930817, unreported; State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported.
6. Seventh Claim for Relief
Nields also claimed below that his conviction and sentence were void or voidable because Hamilton County sought to overprosecute death penalty cases. None of the exhibits in support of this claim was cogent to the issue raised. In the absence of evidence outside the record that was cognizable in a postconviction proceeding, this claim for relief presented a matter that was or could have been raised at trial or on direct appeal. Therefore, this claim was subject to dismissal without a hearing under the doctrine of res judicata. See Perry, supra, paragraph nine of syllabus.
7. Eighth Claim for Relief
Nields claimed that his conviction and sentence were void or voidable because Ohio's postconviction statutes did not provide an adequate corrective process. We have already rejected this argument in State v.Moore (Sept. 18, 1998), Hamilton App. No. C-970353, unreported.
8. Ninth Claim for Relief
Nields claims that Ohio's death penalty is cruel and unusual punishment. This claim is barred by the doctrine of res judicata. Seeid. Furthermore, the claim has been repeatedly rejected by the Ohio Supreme Court. See State v. Coleman (1989), 45 Ohio St.3d 298,544 N.E.2d 622; State v. Brooks (1986), 25 Ohio St.3d 144; 495 N.E.2d 407;State v. Buell (1986), 22 Ohio St.3d 124, 489 N.E.2d 795; State v.Jenkins (1984), 15 Ohio St.3d 164; 473 N.E.2d 264.
9. Tenth Claim for Relief
Nields claimed below that he was denied a fair trial because the state had failed to ensure that its witnesses remained separated throughout the trial. Nields presented the affidavit of state's witness Patricia Denier, who stated that as she and Barbara Beck, another state's witness, sat outside the courtroom, a friend of the victim spoke with them after she testified. The affidavit failed to identify the so-called friend of the victim.
"The purpose of a separation order is `so that [witnesses] cannot hear the testimony of other witnesses,' Evid.R. 615, and tailor their own testimony accordingly. Thus, a spectator or witness may not tell a prospective witness what has taken place in court if the judge has ordered separation of witnesses." State v. Waddy (1992), 63 Ohio St.3d 424,588 N.E.2d 819, citing State v. Spirko (1991), 59 Ohio St.3d 1, 14,570 N.E.2d 229, 246. There was no evidence that the unnamed friend was a witness in the case or that she disclosed any testimony to the witnesses waiting in the hall. Thus, Nields could not demonstrate that any violation of the court's separation order occurred. Furthermore, in light of the overwhelming evidence presented at trial, we cannot say that Nields's right to a fair trial was affected.
10. Eleventh Claim for Relief
Nields challenges the sufficiency of the evidence used to convict him on the underlying robbery charge. This claim is barred by res judicata. See Perry, supra.
11. Twelfth Claim for Relief
Nields claimed that he was denied the effective assistance of trial counsel because counsel did not "life qualify" the jury. The only new evidence Nields submitted below to support this claim was an affidavit by a capital defense attorney describing what he perceived to be the ineffective assistance rendered by Nields's trial counsel. We have previously held that this type of affidavit is not evidence outside the record but, rather, is "more in the nature of notarized legal arguments." See State v. Steffen (May 11, 1994), Hamilton App. No. C-930351, unreported; State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481, C-910229, unreported; State v. Poindexter (Mar. 6, 1991), Hamilton App. No. C-890734, unreported.
We hold that Nields's claim was barred by the doctrine of resjudicata. See Steffen, supra; State v. Cole (1982), 2 Ohio St.3d 112,443 N.E.2d 169.
12. Thirteenth Claim for Relief
Again, Nields challenges the effectiveness of counsel during the guilt phase of the trial. But Nields failed below to submit evidentiary documents setting forth sufficient operative facts to demonstrate substantive grounds for relief. See State v. Jackson (Dec. 21, 1988), Hamilton App. No. C-870884, unreported.
13. Fourteenth Claim for Relief
Nields claimed below that he was denied a fair trial because the trial court did not adequately inquire into the jury's exposure to prejudicial media reports when it returned for the mitigation phase. Nields attached in support of this claim a juror's affidavit and numerous newspaper articles irrelevant to the issues in the petition, all of which failed to reach a minimal threshold of cogency in order to warrant a hearing. Evidence in the form of magazine articles that are irrelevant to the issues in the petition does not overcome the bar of res judicata. SeeState v. Combs (Aug. 24, 1994), Hamilton App. No. C-930468, unreported;State v. Bedford (Sept. 11, 1991), Hamilton App. No. C-900412, unreported.
14. Fifteenth and Sixteenth Claims for Relief
In these claims, Nields challenges the sufficiency of the evidence supporting his conviction for aggravated murder, as well as the suggestiveness of a photographic array shown to a prosecution witness. These claims are barred by res judicata. See Perry, supra.
15. Seventeenth, Twenty-second and Twenty-third Claims for Relief
Nields claimed that he was denied the effective assistance of trial counsel as a result of the failure to secure the appointment of a neuropsychologist, a pharmacologist or toxicologist, and a psychologist for the mitigation phase. As we noted earlier, defense counsel secured the appointment of Dr. Cooper, a psychiatrist and pharmacologist, to testify about the effects of alcoholism. Nields claims, though, that counsel failed to obtain the assistance of a "competent" pharmocologist. But as we stated in Steffen, supra,
 There is, in this regard, no constitutional guarantee that would require a court in a postconviction proceeding to conduct a "competency review" to determine whether a court-appointed mental health expert could have done a better or more thorough job in the time allotted.
 Otherwise postconviction proceedings would be turned "into a `psycho-legal quagmire' a never ending battle of experts similar to a medical malpractice claim." State v. Bedford (Sept. 11, 1991), Hamilton App. No. C-900412, unreported. Nields failed to show that counsel's performance was deficient in failing to obtain additional experts.
16. Eighteenth Claim for Relief
Nields claimed below that trial counsel was ineffective for failing to investigate his background for mitigating factors. Nields presented affidavits from family and friends that were cumulative to the evidence actually presented at trial. See State v. Hicks (Jan. 29, 1993), Hamilton App. No. C-910341, unreported. Furthermore, the affidavit of a juror and of an "expert attorney" failed to meet the minimal level of cogency. See Hawkins, supra.
17. Nineteenth Claim for Relief
Nields again relied on the affidavit of an "attorney expert" to contend below that trial counsel was ineffective in failing to make certain objections during the mitigation hearing. As we have stated earlier, such affidavits are not evidence outside the record, so this claim was barred by the doctrine of res judicata. See Perry, supra; Steffen,supra.
18. Twentieth Claim for Relief
In his petition, Nields further claimed that trial counsel was ineffective during the mitigation phase due to the failure to investigate and present evidence of his remorse. Nields presented a transcript of a taped interview with detectives that was introduced into evidence at trial. The two other documents Cpresented by Nields, which indicated that Nields cried while he was being transported to jail, did not necessarily indicate remorse for the killing, as opposed to a fear of its consequences. Furthermore, as the Supreme Court has stated, "We * * * find that retrospective remorse is to be accorded little weight in mitigation of sentence." State v. Post (1987), 32 Ohio St.3d 380, 394,513 N.E.2d 754, 768.
19. Twenty-first Claim for Relief
Nields claimed that trial counsel was ineffective in failing to better prepare his sister to testify in the mitigation phase. This claim is based on evidence in the original trial record and is barred by the doctrine ofres judicata. See Perry, supra.
20. Twenty-fourth Claim for Relief
Nields claimed that the admission of gruesome photographs at trial rendered his conviction void or voidable. But this claim is also barred by res judicata. See id.
21. Twenty-fifth Claim for Relief
Nields contended below that the trial court erred by allowing the victim's family members to sit through the trial wearing peach-colored ribbons in memory of the victim. But Nields's only support for this claim was a newspaper article that mentioned the ribbons in a single sentence. Clearly, this did not meet the minimal level of cogency to overcome the bar of res judicata. See Perry, supra; Combs, supra.
22. Twenty-sixth Claim for Relief
Nields also claimed that trial counsel was ineffective in failing to present evidence of the relationship between himself and the victim. In this respect, Nields presented evidence outside the record that was cumulative of evidence presented at trial. Furthermore, we note that the scrutiny of counsel's performance must be highly deferential. Nields has failed to overcome the presumption that, under the circumstances, the challenged action might have been considered sound trial strategy. SeeState v. Brown (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523, 540, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177.
23. Twenty-seventh Claim for Relief
Nields contends that the state failed to disclose that one of its witnesses was uncertain of her identification of Nields from a photographic array. But the record discloses that the state's discovery response clearly stated, "[A] photo array shown to Dorothy Alvin on November 14, at which time Ms. Alvin identified the Defendant, although she was not one hundred per cent certain in her identification." This claim could or should have been raised on direct appeal, and is, therefore, barred by the doctrine of res judicata. See Perry, supra.
24. Twenty-eighth Claim for Relief
Nields claimed below that he was denied the effective assistance of trial counsel at the mitigation phase when counsel presented the testimony of a recovering alcoholic without an accompanying unsworn statement, because, without the statement, the witness's testimony was irrelevant. Because Nields did not support this claim with evidentiary material that met a minimal level of cogency, it was properly barred byres judicata.
For all the foregoing reasons, Nields's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
In his second assignment of error, Nields argues that Ohio's postconviction statutes do not provide an adequate corrective process. We overrule this assignment of error on the authority of Freeman v. Maxwell
(1965), 4 Ohio St.2d 4, 210 N.E.2d 885. See, also, State v. Moore
(Sept. 18, 1998), Hamilton App. No. C-970353, unreported.
 CONCLUSION
Having overruled both assignments of error, we affirm the judgment of the trial court.
Doan, P.J., Gorman and Winkler, JJ.